Elizabeth ANGOTT, et al., Plaintiffs,

v.

OWENS–ILLINOIS HOURLY RETIRE-
MENT PLAN and Owens–Illinois,
Inc., Defendants.

Civ. A. Nos. 84–2465, 87–609.

United States District Court,
W.D. Pennsylvania.

May 9, 1991.

Richard Tucker, Jr., Tucker Arensberg, P.C., Pittsburgh, Pa., for plaintiffs.

Robert L. Johnson, Washington, Pa., Stephen Spencer, Robert J. Quick, Philadelphia, Pa., for defendants.

## ADJUDICATION

STANDISH, District Judge.

### I

Before the court for consideration are two consolidated civil actions brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1001, *et seq.* With one exception, plaintiffs are 52 retirees and former employees of Brockway, Inc. (Brockway).[1] One plaintiff, Margaret M. Suhay, is the administratrix of the estate of Thomas Suhay, a former retiree and employee of Brockway. Suhay and the other plaintiffs were employed at the Brockway plant in Washington County, Pennsylvania, and were participants in the Retirement Plan for Hourly Employees of Brockway, Inc. (N.Y.) (the Plan). In March, 1984, Brockway voluntarily closed its Washington plant. At that time, all plaintiffs, as well as Suhay, had been employed for 30 years or more. None was over age 60. Eleven were age 55 or over. Forty-one (including Suhay) were under age 55.

It is undisputed that all of the plaintiffs were entitled to receive some form of early retirement benefit pursuant to Section 4.2 of the Plan.[2] Specifically, because all plaintiffs had 30 years of credited service and their employment had been terminated as a result of a plant closing, they were entitled to receive an unreduced accrued retirement benefit even though they had not attained the age of 55.

Each plaintiff (including Suhay), however, has claimed eligibility for additional benefits under the "Level Benefit Option" pursuant to Section 8.2(c) of the Plan under which he or she would be paid, until eligible at age 62 for social security benefits, additional pension benefits equal to 83.1% of the estimated social security benefits to which he or she would be entitled at age 62.[3]

The Level Benefit Option is available to participants who retire between the ages 55 and 61. It provides for a sliding scale of alternative benefits based on the employee's age. An employee who retires at age 55 under this section is entitled to receive a supplemental benefit equal to only 54% of his or her estimated social security benefits, but as that employee approaches age 61, he or she receives a higher percentage. A participant retiring at age 60 under this section would be entitled to a supplemental benefit of 83.1% of his or her estimated social security benefits. Once the participant reaches age 62, however, his or her monthly pension benefits are reduced to offset the additional amounts paid to the retiree prior to the commencement of social security benefits.

In this action, plaintiffs claim that they were, at the time of their retirement, which was triggered by the plant closing, entitled to receive, over and above the unreduced accrued benefit, additional benefits under the Level Benefit Option, pursuant to Section 8.2(c), calculated as if each plaintiff was 60 years old. To support this asser-

---

**1.** In February, 1988, defendant Brockway, Inc. was acquired by Owens–Illinois, Inc. and, as a result, Brockway, Inc. has ceased to exist and the Brockway Retirement Plan–Hourly Employees was merged into the Owens–Illinois Hourly Retirement Plan. With respect to the above-entitled action, Owens–Illinois, Inc. is the successor in interest to all of the debts and obligations of Brockway, Inc. and Owens–Illinois Hourly Retirement Plan is the successor in interest to all of the debts and obligations of the Brockway Retirement Plan–Hourly Employees. By order of court dated April 30, 1991, the caption in this civil case was amended to re-

place defendant Brockway, Inc. and Brockway Retirement Plan–Hourly Employees with Owens–Illinois, Inc. and Owens–Illinois Hourly Retirement Plan, respectively. Because Brockway, Inc. was the employer at the time of the within action, the opinion will refer to defendants as Brockway, Inc. and the Brockway Retirement Plan–Hourly Employees.

**2.** *See* p. 303, ¶ 41, *infra,* for full text of Section 4.2 of the Plan.

**3.** *See* pp. 303–304, ¶ 43, *infra,* for full text of Section 8.2(c) of the Plan.

tion, plaintiffs rely on identical provisions contained in two collective bargaining agreements which, together, cover all 52 plaintiffs in this case.[4] The relevant section in each agreement provides, in part, that an employee under age 60, with 30 years of credited service, whose employment is terminated as a result of a plant closing, "may retire and receive a pension benefit figured as if he [or she] were age 60."

A bench trial was held before this member of the court on March 13, 1991. For the reasons set forth below, the court concludes that judgment must be entered in favor of defendants because the Plan, construed together with all the relevant documents, does not entitle plaintiffs to receive benefits under the Level Benefit Option calculated as though each was 60 years of age.

## II

At the trial, the parties stipulated to the following facts:

1. Plaintiffs Elizabeth Angott, John Angott, Sammy Angott, Norma J. Binder, Alice Borkowski, Mary G. Branczek, Frank J. Buchek, John C. Byers, Jr., Samuel G. Byrne, Donald L. Calvert, Donald L. Carroll, Donald Clutter, Robert Cook, William D. Crouse, Shirley Davidson, Angeline Desmond, Wilma R. Desmond, Harry E. Evans, William I. Funk, Robert Gray, Ida Mae Gregor, Warren Huffman, Mildred Ingersoll, Robert C. Johnson, Gloria Lorenzato, James W. Lutz, Carolyn M. Maloy, Ray H. Mankey, Margaret McCoy, William S. McCoy, Richard F. Milligan, John F. Paluda, Gail J. Pearson, Robert G. Pletcher, Carol A. Plott, Herbert L. Phillips, Arvella Prigg, Carl A. Pryor, Melvin Pryor, Fred Reihner, Anna Mae Reynolds, Kenneth E. Roble, Donald W. Rogers, Edward Rydzak, Ernest E. Salada, Edna R. Sickles, Kay L. Stepp, William T. Strnisha, Jack S. Szolek, William P. Toporcer, and Iona M. Welling are all former employees of Brockway who were employed at Brockway's manufacturing plant in Washington County, Pennsylvania.

2. Plaintiff Margaret M. Suhay is the administratrix of the estate of Thomas Suhay, her late husband, who died on April 25, 1985.

3. Thomas Suhay was a former employee of Brockway who was employed at Brockway's manufacturing plant in Washington County, Pennsylvania.

4. Defendant Plan is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and, at all times prior to the initiation of this action, maintained an office for the transaction of business at McCullough Avenue, Brockway, Pennsylvania.

5. Brockway was a corporation incorporated under the laws of the State of New York and was, at all times prior to the initiation of this lawsuit, authorized to transact business within the Commonwealth of Pennsylvania and maintained an office for the transaction of business at Centre City Tower, 650 Smithfield Street, Pittsburgh, Pennsylvania.

6. Owens–Illinois, Inc. ("Owens–Illinois") is a corporation incorporated under the laws of the State of Delaware and maintains its principal place of business in Toledo, Ohio.

7. In February, 1988, Owens–Illinois acquired Brockway ("the acquisition").

8. As a result of the acquisition, Brockway was dissolved as a corporation and the Plan was merged with the Owens–Illinois Hourly Retirement Plan.

9. Owens–Illinois is the successor in interest to all of the debts and obligations of Brockway with respect to the above-entitled matter.

10. The Plan is an employee benefit plan maintained by Brockway prior to the acquisition and by Owens–Illinois since the acquisition.

11. The Plan was maintained for the benefit of Brockway employees and continues to provide retirement income to former Brockway employees.

---

**4.** *See* p. 303, ¶ 40, *infra.*

12. Brockway was the sponsor, and the Employee Benefits Committee of Brockway was the Plan administrator, for the Plan prior to the acquisition, and Owens–Illinois has been the sponsor and the Owens–Illinois Benefits Committee has been the Plan administrator since the acquisition.

13. The Plan was financed exclusively through contributions made by Brockway prior to the acquisition and has been financed exclusively through contributions made by Owens–Illinois since the acquisition.

14. Brockway was a manufacturer of glass containers which, until March of 1984, maintained a manufacturing plant in Washington County, Pennsylvania.

15. Brockway permanently closed its Washington County manufacturing plant in March of 1984.

16. At the time of the closing of Brockway's manufacturing plant in Washington County, Pennsylvania, the Plan and the Amendatory Agreement made as of the 1st day of January, 1975, by and between Brockway Glass Company, Inc. and Manufacturers Hanover Trust Company, as amended by the Amendatory Agreement made as of the 1st day of September, 1983, by and between Brockway, Inc. (NY), formerly Brockway Glass Company, Inc. and Manufacturers Hanover Trust Company ("the Trust Agreement") were documents and instruments governing the Plan.

17. At the time of the closing of Brockway's manufacturing plant in Washington County, Pennsylvania, all of the plaintiffs were covered by either the collective bargaining agreement effective April 1, 1983 through March 31, 1986 between Brockway and the Glass, Pottery, Plastics and Allied Workers International Union ("the Union") covering Brockway's employees in the Automatic Machine Department ("the AMD Agreement") or the collective bargaining agreement effective April 1, 1983 through March 31, 1986, between Brockway and the Union covering Brockway's employees in the Production and Maintenance Department ("the PMD Agreement").

18. At the time of the closing of Brockway's manufacturing plant in Washington County, Pennsylvania, Section 15 of Article 22 of the AMD Agreement and Section 15 of Article 19 of the PMD Agreement (collectively "Section 15") provided in identical language that when the Company closed a plant permanently, an employee under age 60 whose employment had been terminated on or after April 1, 1983 could retire and receive a pension benefit "figured as if he [or she] were age 60 based on his years and months of credited service at the date of such closing", provided he [or she] had 30 or more years of credited service.

19. At the time of the closing of Brockway's manufacturing plant in Washington County, Pennsylvania, Section 8.2(c) of Article 8 of the Plan Agreement provided for a Level Benefit Option for certain participants who retired before being eligible for monthly social security benefits. Such participants could elect to secure a greater benefit than he or she would otherwise be entitled to receive until the participant attained age 62 and became eligible to receive social security benefits. The additional benefit payable to a participant depended on his or her age at retirement and the amount of the benefit was based on a percentage of the monthly social security benefits estimated to be payable to him or her at age 62 as follows:

| Age at Retirement | Percentage of Primary Social Security at Age 62 |
|---|---|
| 61 | 91.9% |
| 60 | 83.1% |
| 59 | 76.0% |
| 58 | 69.6% |
| 57 | 63.8% |
| 56 | 58.7% |
| 55 | 54.0% |

20. At the time of the closing of Brockway's manufacturing plant in Washington County, Pennsylvania, all of the plaintiffs were covered by the Plan and were active participants therein.

21. The employment of all of the plaintiffs was terminated as a result of Brockway's permanently closing its Washington County manufacturing plant.

22. All of the plaintiffs had been employed by Brockway for more than 30 years and had 30 or more full years of

credited service when their employment was terminated.

23. All of the plaintiffs were under age 60 when their employment was terminated.

24. None of the plaintiffs was eligible to receive monthly social security retirement benefits at the date of the closing of Brockway's Washington County manufacturing plant.

25. All of the plaintiffs filed, with the Plan, Applications for Determination of Retirement Benefits ("the Applications").

26. None of the Applications provided the plaintiffs with an opportunity to elect the Level Benefit Option with benefits "figured as if he [or she] were age 60."

27. Plaintiffs Elizabeth Angott, Sammy Angott, Donald Clutter, Shirley Davidson, Warren Huffman, Mildred Ingersoll, Ray H. Mankey, Arvella Prigg, Kenneth E. Roble, Ernest E. Salada and William T. Strnisha, all of whom were age 55 or over but under age 60 at the time of the plant closing ("the 55–and–over plaintiffs"), were provided with forms for electing the Level Benefit Option, but said forms contained dollar amounts which were not calculated as though the applicants were age 60.

28. Plaintiffs John Angott, Norma J. Binder, Alice Borkowski, Mary G. Branczek, Frank J. Buchek, John C. Byers, Jr., Samuel G. Byrne, Donald L. Calvert, Donald L. Carroll, Robert Cook, William D. Crouse, Angeline Desmond, Wilma R. Desmond, Harry E. Evans, William I. Funk, Robert Gray, Ida Mae Gregor, Robert C. Johnson, Gloria Lorenzato, James W. Lutz, Carolyn M. Maloy, Margaret McCoy, William S. McCoy, Richard F. Milligan, John F. Paluda, Gail J. Pearson, Robert G. Pletcher, Carol A. Plott, Herbert L. Phillips, Carl A. Pryor, Melvin Pryor, Fred Reihner, Anna Mae Reynolds, Donald W. Rogers, Edward Rydzak, Edna R. Sickles, Kay L. Stepp, Thomas Suhay, Jack S. Szolek, William P. Toporcer, and Iona M. Welling, all of whom were under age 55 at the time of the plant closing ("the under–55 plaintiffs"), were not provided with any forms for electing the Level Benefit Option.

29. Since 1984, all of the plaintiffs have received some form of retirement benefit; but none of the plaintiffs has received payments under the Level Benefit Option calculated as though he or she were age 60.

30. On or about May 27, 1986 and June 11, 1986, the plaintiffs submitted their own written applications to Brockway for benefits under the Level Benefit Option based upon a retirement age of 60.

31. On or about August 24, 1986, Brockway denied all of the plaintiffs' applications for benefits under the Level Benefit Option based upon a retirement age of 60.

32. On or about October 1, 1986, the 55–and–over plaintiffs submitted to the Employee Benefits Committee of Brockway a Request for Review of the denial of their claims.

33. On or about October 1, 1986, the under–55 plaintiffs submitted to the Employee Benefits Committee of Brockway a Request for Review of the denial of their claims.

34. On or about November 20, 1986, the Employee Benefits Committee of Brockway denied the appeal of the 55–and–over plaintiffs.

35. On or about November 20, 1986, the Employee Benefits Committee of Brockway denied the appeal of the under–55 plaintiffs.

36. The decisions by the Employee Benefits Committee of Brockway were the final step in the internal administrative remedy available to claimants whose claims had been denied under the Plan, and the plaintiffs had exhausted said internal administrative remedy.

37. On or about April 18, 1984, shortly after the closing of the Washington Facility, the Union filed a grievance on behalf of some of the plaintiffs and others seeking to have Section 11 and Section 15 of Article 19 of the PMD Agreement and Section 11 and Section 15 of Article 22 of the AMD Agreement "enforced according to the language of the contract."

38. The Union dismissed the grievance, and made no request that it be processed further.

39. No demand for arbitration was ever made by the Union, and the grievance did not proceed to arbitration.

## III

The court makes the following additional findings of fact:

40. The two collective bargaining agreements, referred to in paragraphs 17 and 18 above, contain the identical provision set forth below:

Effective April 1, 1983, when the Company elects to close a plant permanently, an employee under age 60 whose employment is terminated as a result of such closing on or after April 1, 1983 may retire and receive a pension benefit figured as if he were age 60 based on his years and months of credited service at the date of such closing, provided he has thirty (30) or more full years of credited service at the date of such closing.

(Section 15 of Article 19 of the PMD Agreement and Section 15 of Article 22 of the AMD Agreement).

41. In a document dated October 1, 1990, the parties stipulated that, as a result of the inclusion of this plant-closure provision in the collective bargaining agreements set forth above, the Plan was amended to add Section 4.2 which reads as follows:

Section 4.2 *Early Retirement Benefits in the Event of a Plant Closing.*

(a) *Eligibility.* An Active Participant who has not attained age 55 but who has at least 30 years of Credited Service and who is represented by either the Glass, Pottery, Plastics & Allied Workers International Union or the American Flint Glass Workers Union in a Glass Container Division facility of the Company, only in the event that the Company shall permanently close the facility at which the Active Participant is employed, may elect to retire after said permanent closing.

(b) *Amount of Benefit.* The amount of the early retirement benefit of an Active Participant who retires under Section 4.2(a) shall be equal to his Accrued Benefit.

(c) *Payment of Benefit.* The early retirement benefit of an Active Participant who retires under Section 4.2(a) shall be paid only in the form of a single life annuity with a guarantee of payment for six years.

42. With respect to the payment of benefits under the Plan, Section 3.3 of the Plan provided, both before and after April 1, 1983, that, unless an optional form of payment had been elected under Article 8 of the Plan, benefits would be paid in the form of a single life annuity with six years certain, with actuarial adjustments in the event that the participant had a spouse on the date of retirement.

43. Article 8 of the Plan, referred to in paragraph 19 above, which provided for the Level Benefit Option, is set forth more fully below:

*Level Benefit Option.* An Active Participant who attains age 55 with 10 Years of Credited Service, and who then retires before he is eligible to receive Social Security monthly benefits may elect to receive a benefit in an amount greater than that to which he would otherwise be entitled under this Plan payable only until the first day of the month in which the Participant attains age 62, and thereafter, he shall receive a benefit in an amount which is less than the amount which would otherwise be payable under this Plan. The amount to be paid until age 62 under this option, in addition to this normal monthly benefit, shall be an amount equal to a percentage of the monthly primary Social Security benefits estimated to be payable to the Participant at age 62 (or other eligibility age if the Social Security laws are amended) determined in accordance with the following schedule:

| Age at Retirement | Percentage of Primary Social Security at age 62 |
|---|---|
| 61 | 91.9% |
| 60 | 83.1% |
| 59 | 76.0% |
| 58 | 69.6% |
| 57 | 63.8% |
| 56 | 58.7% |
| 55 | 54.0% |

The amount to be paid from age 62 under this option shall be the amount that was paid prior to age 62 under this option reduced by the full amount of the monthly Primary Social Security benefits which were estimated to be payable to the Participant at age 62.

\* \* \*

## IV

After the plant closed, plaintiffs claimed benefits under the Level Benefit Option of the Plan based upon a retirement age of 60. On October 1, 1986, the manager of employee benefits denied their claims. On November 20, 1986, plaintiffs' request for review was denied by the Employee Benefits Committee of the Plan ("the Committee"). (Exhibits 12 & 13). It is this latter denial by the Committee of which plaintiffs now seek review by this court.

## A

### *Jurisdiction Over the Claim*

■ At the outset, the court must establish whether it has subject matter jurisdiction of this claim. Defendants contend that the Plan, by its own terms, does not incorporate the terms of the collective bargaining agreements and that, because plaintiffs' claims arise under those agreements rather than under the Plan, plaintiffs are required to resolve their claims in accordance with the grievance procedure set forth in the employment contracts. Defendants add that, since plaintiffs elected not to pursue the grievance procedure, their claims for relief have been abandoned and are now time barred. The parties agree that plaintiffs would no longer have the grievance procedure available to them.

Plaintiffs, on the other hand, assert that their claims for benefits under the Level Benefit Option are properly before the court under ERISA. They maintain that the Plan itself provides for a special retirement option for employees electing to retire after a plant closing, and that the provisions of the collective bargaining agreements, treating such employees as if they are age 60, are provisions contained in "Plan documents" which the court should consider in construing the terms of the Plan.

The court will consider the relevant provisions of the collective bargaining agree-

ments as if they were set forth in "Plan documents" and will assume jurisdiction of plaintiff's claims under ERISA.[5] Although there is no clear indication in the Plan itself that its provisions should be deemed to include relevant sections of collective bargaining agreements to which Brockway is a party, the Plan does provide that any termination or amendment would be subject to the terms of any collective bargaining agreement. (The Plan, § 12.1). Moreover, the Employee Benefits Committee of Brockway, when it denied the claims of the plaintiffs on November 20, 1986, interpreted the Plan provisions as if they included the terms of Section 15 of the collective bargaining agreements. (Exhibits 12 & 13).

## B

### *Standard of Review*

■ Having determined that the claims properly are asserted under ERISA, and, therefore, within the court's jurisdiction, the next issue to be addressed is the appropriate standard of review to be applied to the Committee's denial of plaintiffs' claimed benefits. The United States Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989), held that:

> ... [A] denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan....

Where, as here, the governing documents of the Plan do not vest the administrator with discretion in its interpretation, the district court's review of the denial of pension benefits is *de novo*. *See also Anderson v. Pittsburgh–Des Moines Corp.*, 893 F.2d 638, 639 (3d Cir.1990). Exercising *de novo* review of the defendants' decision, the court must next determine whether the Committee's interpretation of

---

**5.** The court notes that the final outcome of this case would be the same if the court determined that the terms of the collective bargaining agree-

ments could not be considered by this court in construing the terms of the Plan.

the Plan's documents was correct as a matter of law.

## C

### Discussion

■ The Committee's denial of plaintiffs' appeal was based on the conclusion that Section 15 of both collective bargaining agreements was intended to provide one benefit: All employees with 30 years of service who worked at a plant that closed would receive a retirement benefit, that is, an unreduced accrued benefit, calculated as if each were age 60. (Exhibits 12 & 13).

Under ordinary circumstances, that is, not in the event of a plant closing, an active participant seeking to retire before his or her normal retirement age will receive a reduced retirement benefit. Section 4.1 of the Plan provides that an early retiree's pension will be reduced by one-half of one percent for each month by which the commencement of benefits precedes the employee's 60th birthday.[6]

In their decision declining review of the initial denial of benefits, the Committee stated that:

> The provision in the collective bargaining agreements, stating that participants who had 30 years of service and were employed at a plant that closed would receive a retirement benefit as if they were age 60, was negotiated to give special retirement benefits to participants affected by a plant closing. Without this special retirement benefit, the Claimants, who were under age 60, would be able to receive a retirement benefit from the Company which would be reduced by as

much as 30%. The use of the words "as if they were age 60" in the collective bargaining agreements was, in layman's language, another way of saying that there would be no actuarial reduction of benefits for participants who retired as a result of a plant closing with 30 years of service. Therefore, the use of the words "as if they were age 60" had the effect of giving participants a greater retirement benefit than they otherwise would have received.

(Exhibit 12, p. 4). The express purpose of Section 15, according to the Committee, was to eliminate any actuarial reduction in the benefit to which an employee was entitled.

### i

Plaintiffs maintain that this language in Section 15, according them the status of a 60–year–old for purposes of receiving an unreduced accrued benefit upon early retirement, also entitles them to receive benefits under the Level Benefit Option provided for in Section 8.2(c) calculated as if he or she were 60 years of age. Essentially, plaintiffs contend that, regardless of their actual ages, because each plaintiff had 30 years of credited service at the time of retirement, he or she is entitled to receive, until age 62, an additional benefit equal to 83.1% of his or her estimated social security retirement benefits.[7]

### ii

Meanwhile, defendants contend that Section 15 has no application to Section 8.2(c). Defendants accurately note in their brief that Section 15 of neither collective bar-

---

6. Section 4.1 provides, in part, as follows:

    *Section 4.1. Early Retirement Benefit Other Than in the Event of Plant Closing.*

    (a) *Eligibility.* An Active Participant who has either attained age 60, or has attained age 55 and has at least 10 Years of Credited Service, may elect to retire prior to Normal Retirement Age and receive an early retirement benefit based on his Accrued Benefit as of his early retirement date.

    (b) *Amount of Benefit.* The amount of the early retirement benefit of an Active Participant who retires under Section 4.1(a) shall be equal to his Accrued Benefit; provided, however, that, except for any Active Participant

who has completed 30 or more Years of Credited Service, the amount of his early retirement benefit shall be reduced by ½ of one percent for each month by which the benefit commencement date precedes his attainment of Age 60. The benefits of a Participant who is not an Active Participant at the time of his early retirement shall be determined in accordance with the provisions of Article 6.

7. Under the schedule set forth in Section 8.2(c), a participant aged 60, electing the Level Benefit Option, would receive an additional benefit equal to 83.1% of the estimated social security benefits payable to him or her at age 62.

gaining agreement makes any reference to the Level Benefit Option provided for in the Plan. Moreover, another provision of each collective bargaining agreement specifically refers to a "Level Income Option," an optional pension benefit identical to the Level Benefit Option described in the Plan. This provision is set forth in Article 19, Section 11 of the PMD Agreement and in Article 22, Section 11 of the AMD Agreement (collectively "Section 11"). Section 11 provides, as does Section 8.2(c) of the Plan, that an employee, retiring before he or she becomes eligible, at age 62, to receive social security benefits may, until such eligibility occurs, receive a monthly pension higher in amount than the early retirement benefit otherwise payable under the Plan. The amount of increased benefits is expressed as a percentage of the retiree's anticipated social security entitlement at age 62. The age-linked percentages in Section 11 are exactly the same as those listed in Section 8.2(c) of the Plan.[8]

Section 15 of the collective bargaining agreements makes no reference to the Level Income Option provided for in Section 11 of the agreements. Furthermore, neither Section 8.2 of the Plan nor Section 11 of either collective bargaining agreement provides that, in the event of a plant closing, the increased optional benefits should be calculated as if the retiree had attained the age of 60, notwithstanding his or her actual age. The absence of any reference in Section 15 to a Level Benefit or Level Income Option, and the absence of any reference in Section 11 or Section 8.2(c) to a plant-closure exception to the schedule of age-linked social security percentages, indicates that the provisions of Section 15 were not intended to affect the Level Benefit or Level Income Option.

### iii

The parties have stipulated that, as a result of the changes negotiated in the collective bargaining agreements, that is, the addition of Section 15, the Plan was amended to add Section 4.2. (*See* Stipulation, p. 4, ¶ 6, Oct. 1, 1990, cited at p. 303, *supra*). Section 4.2 provides only that the

early retirement benefit of a participant retiring as a result of a plant closing shall be equal to his or her accrued benefit paid in the form of a single life annuity with guaranteed payments of six years. In other words, under Section 4.2, there is no actuarial reduction of benefits for participants retiring under the age of 60, as would be the case for retirees entitled to normal retirement benefits under Section 4.1. Section 4.2 does not refer to the Level Benefit Option and Section 8.2(c) of the Plan was not correspondingly amended to reflect any change in the availability of benefits under the Level Benefit Option to participants retiring under Section 4.2 resulting from the addition of Section 15 to the collective bargaining agreements.

Plaintiffs do not contend that the Plan, contrary to the intentions of the parties, was improperly or incompletely amended. Nor was any parol evidence offered at trial that the parties intended Section 15 to bring about an amendment to Section 8.2(c) of the Plan. On the contrary, plaintiffs argue that Section 15 is clear and unambiguous, and that, under an objective construction of its terms, it accords plaintiffs an election of benefits under the Level Benefit Option calculated as though each plaintiff were age 60.

### iv

The court concludes that the plant closing provisions contained in Section 15 of the collective bargaining agreements were intended to accomplish a purpose different from, and unrelated to, that of the Level Benefit Option provided for in Section 8.2(c) of the Plan. Section 15 was intended to secure for eligible retiring employees an accrued benefit for pension purposes equal to the accrued benefit the employee would have received had he or she retired at the age of 60. The exclusive purpose of Section 15 is expressed in Section 4.2 of the Plan. It was not intended to affect the percentage calculation of "the amount to be paid until age 62" pursuant to the Level Benefit Option.

The purpose of the Level Benefit Option is to provide alternative retirement benefits

---

**8.** *See* p. 301, ¶ 19, *supra.*

for eligible retirees between the ages of 55 and 61 actuarially equivalent to the benefits otherwise payable to them. Section 8.2 of the Plan provides in part:

*Section 8.2. Optional Forms of Benefit Payment.* Except for Participants entitled to a benefit under Article 6, and as provided in Section 5.3 of Article 5, a Participant who is eligible for a benefit under this Plan may elect in accordance with Section 8.3 to receive the Actuarial Equivalent of his benefit in one of the following optional forms:

\* \* \* \* \* \*

Under the Level Benefit Option, increases in pension benefits paid up to the time of social security eligibility are offset by lower payments thereafter so that the retiree receives, under the option, the "Actuarial Equivalent" of his or her normal, or early, retirement benefit. All plaintiffs here were under 60 years of age on the date of retirement. Forty-one were under age 55. Although the point may be somewhat tangential, plaintiffs should, at least, be prepared to show that such actuarial equivalency could be achieved, particularly as to the under-55 plaintiffs.

To comply with Section 8.2 quoted above, that is, to achieve the actuarial equivalent of optional benefits with the plaintiff's early retirement benefits payable under Section 4.2, increased payments made to each plaintiff, before he or she attains the age of 62, would have to be offset by reduced benefit payments thereafter. Neither party offered evidence to show whether such actuarial equivalency could be achieved if the plaintiffs had been treated as if they were age 60 on the dates of their retirements.

v

For all the reasons mentioned above, the court concludes that no plaintiff under the age of 60 on the date of retirement is entitled to receive benefits under the Level Benefit Option calculated as though he or she were 60 years old on that date.