Raymond L. ANDERSON, Individually and On Behalf of All Others Similarly Situated, Appellant,

v.

PITTSBURGH–DES MOINES CORPORATION and Retirement Plan for Salaried Employees of Pittsburgh–Des Moines Corporation, Appellees.

No. 89–3383.

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1990.

Decided Jan. 12, 1990.

Roger H. Taft (Argued), Marcia H. Haller, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellant.

James D. Morton (Argued), Buchanan Ingersoll, Professional Corp., Pittsburgh, Pa., for appellees.

Before GIBBONS, Chief Judge, SCIRICA, Circuit Judge, WALDMAN,* District Judge.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Raymond L. Anderson, a retired salaried employee of the Pittsburgh–Des Moines Corporation ("PDM"),[1] appeals dismissal by the district court of his ERISA claim and pendent state-law claims relating to denial of benefits under a pension plan administered by his former employer. He also appeals the district court's decision to exclude certain evidence at trial. We will reverse and remand.

---

* Hon. Jay C. Waldman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The acronym "PDM" is used of several related entities, notably the Pittsburgh–Des Moines Steel Company, a partnership, and the Pittsburgh–Des Moines Company, an older corporation into which the partnership merged in 1955 and which then underwent several name changes to become, briefly, the Pittsburgh–Des Moines Steel Company, a corporation, and at last, Pitt–Desmoines, Inc., a defendant and appellee in this case. Hereinafter "PDM" refers to any these entities, depending on the date of reference.

## I.

From December 4, 1944 to November 30, 1959, Anderson worked as an hourly employee at the Warren, Pennsylvania, plant of Hammond Iron Works, a Pennsylvania corporation. On the latter date, Hammond was acquired by and merged into PDM. Anderson continued to work as an hourly employee for PDM at the Warren plant until, on January 1, 1961, he was transferred to a salaried, supervisory job with PDM. He continued as a salaried employee from that date until his involuntary retirement from PDM, at age 54, on July 29, 1983.

During his time with Hammond, Anderson was a participant in the pension plan for Hammond hourly employees. After the merger, during the thirteen months he worked as an hourly employee of PDM, he was covered by PDM's plan for hourly employees, which, for purposes of computing pension benefits, gave full credit for continuous service as an hourly employee of Hammond. When he assumed his salaried position with PDM in 1961, Anderson became a participant in the Retirement Plan for Salaried Employees of Pittsburgh–Des Moines Corporation ("the Plan"). PDM and the Plan are the defendants and appellees in this case. The Plan, which began in 1941, was restated and amended several times; the version which governed Anderson's retirement was effective January 1, 1976 (the "1976 Plan").

When Anderson came to retire, PDM's Benefits Administrator informed him that for purposes of computing his pension benefits under the Plan, the period of his "Continuous Service" with "the Company" would include 50% of his thirteen months as an hourly employee of PDM but no credit at all for his previous employment as an hourly worker at Hammond. Anderson contended that he should receive 50% credit for his time as an hourly worker at Hammond as well. He urged that Hammond was a predecessor of PDM and that the expression "the Company" in the 1976 Plan included PDM's predecessors as well as PDM itself. He advanced this contention in an unsuccessful claim and appeal to PDM's Plan Administration Committee, thus exhausting his internal remedies.

He then brought suit in U.S. District Court under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (1982). In Count I of the complaint Anderson sought additional pension benefits, as well as declaratory and injunctive relief from the alleged breach, by PDM and the Plan, of fiduciary duties and of duties to provide benefits, and alleged reduction of benefits due, all under ERISA. The remaining Counts, II through VI, presented pendent claims based on state law.

A bench trial was held on August 30 and 31, 1988. The judge excluded certain evidence, extrinsic to the Plan's own documents, which the plaintiff offered as bearing on PDM's understanding of the term "the Company" in Section 2.03 of the 1976 Plan. After trial, the court dismissed the ERISA claim by order of October 26, 1988, and entered judgment for the defendants on Count I; the accompanying memorandum simply incorporated PDM's proposed findings of fact and conclusions of law without change. Then by order entered April 27, 1989, in response to PDM's motion for judgment on the pleadings, the court declined jurisdiction of Counts II–VI, the pendent state-law claims, and dismissed them without prejudice, thus terminating the suit. From these two orders Anderson now appeals. He also appeals the rulings of the district court excluding some extrinsic evidence of PDM's own understanding and interpretation of the term "the Company" in the 1976 Plan.

## II.

■ We must first determine the proper scope of review. A district court's review of the denial of pension benefits by a plan administrator is de novo, at least when, as here, the governing documents of the plan do not in terms vest the administrator with discretion in its interpretation. *Firestone Tire & Rubber Co. v. Bruch*, — U.S. —, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), *aff'g*, 828 F.2d 134, 145 (3d Cir.1987). Under *Bruch*, review in the court of appeals is

**640**

also de novo. *Haeffele v. Hercules Inc.*, 839 F.2d 952, 957 (3d Cir.1988) ("Where, as here, the plan administrator has a financial interest in the outcome, the interpretation or construction of a plan is subject to de novo review by the district court, and by this court as well.") (citing *Bruch*, 828 F.2d at 145). We reject PDM's contention that appellate review by this court should use the "clearly erroneous" standard for findings of fact under Fed.R.Civ.P. 52(a).

### III.

Exercising de novo review of the district court's dismissal of the ERISA claim, we then must determine whether its interpretation of the Plan's documents was correct as a matter of law. The contested portion of the 1976 Plan is section 2.03, which reads in relevant part:

2.03 Credited Service: The amount of the benefit payable to or on behalf of a Participant shall be determined on the basis of his Credited Service....

(a) ... Credited Service is referred to as Continuous Service and defined as "the period of time during which a Salaried Employee or Participant shall be continuously employed by the Company prior to his Normal Retirement Date....

["]In cases of transfer of an hourly paid non-supervisory shop employee or field employee to Salaried Employee status, fifty percent (50%) of the period of continuous employment of such employee as an hourly paid shop or field employee shall be included in determining his Continuous Service."

Appellees' Exhibit B at 23–24. The gravamen of Anderson's ERISA claims is that PDM, in administering the Plan, applied a misinterpretation of the term "the Company" in this passage, limiting it to PDM itself and wrongfully excluding companies such as Hammond which had merged into PDM. Thus, Anderson contends, PDM and the Plan for Salaried Employees violated their duties under ERISA, by refusing to provide him with benefits in an amount crediting him for 50% of his service as an hourly worker for Hammond.

The district court found that in this contract document the term "the Company" is unambiguous. It adopted PDM's own construction of the term and in its memorandum opinion of October 28, 1988 incorporated by reference PDM's proposed conclusion of law that "the Plan is unambiguous and there is no need to resort to extrinsic evidence in interpreting it." App. 51A. However, we find that the term "the Company" in the 1976 Plan is not unambiguous as a matter of law. *Fox v. U.S. Dep't of Housing & Urban Dev.*, 680 F.2d 315, 319–320 (3d Cir.1982). The term is nowhere defined in the 1976 Plan itself, which uses it several times. The 1976 Plan sometimes clearly limits the term to PDM; sometimes it seems to apply it to predecessor entities with the same acronym as well; and sometimes, as in section 2.03, one could reasonably understand it to mean PDM together with some of its corporate acquisitions. Anderson contends that the term must be construed by reference to the 1971 Plan, which arguably included acquisitions of PDM such as Hammond within the scope of the term "Company" for some purposes. He also urges that in administering the Plan PDM sometimes manifested an understanding of the term which included Hammond. Under the Plan, PDM does count hourly employment with Hammond as service with "the Company" when it determines a salaried employee's eligibility for a pension, though not when it fixes the amount of the pension. While "a clear and unambiguous contractual provision raises no factual issue," yet "as a general rule the meaning of a contract is a matter of fact." *First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 339 (3d Cir. 1983). This contract must be interpreted under the general rule. The district court erred in concluding as a matter of law that the term "the Company" was unambiguous and that the contract therefore excluded Hammond for purposes of computing Anderson's service as an hourly employee. A new trial must thus be held on the ERISA claims.

### IV.

We turn now to the evidentiary rulings of the district court. Since it errone-

ously concluded that the contract was unambiguous, it mistakenly excluded certain extrinsic evidence bearing on the construction of the term "the Company." The proffered evidence included testimony and documents manifesting PDM's understanding of the contract. Since the interpretation of this contract term is a "matter of fact," *First Jersey Nat'l Bank* at 339, it was an abuse of discretion for the district court to exclude any appropriate extrinsic evidence bearing on its interpretation. *See United States v. Driggs*, 823 F.2d 52, 54 (3d Cir. 1987) (rulings on admission of evidence are reviewed for abuse of discretion); *but cf. Brobst v. Columbus Services Int'l*, 824 F.2d 271, 274 (3d Cir.1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988) (rulings on relevancy are subject to plenary review).

## V.

Since we will remand for a new trial of Count I, we need not reach the question whether the district court abused its discretion in dismissing the other Counts, presenting pendent claims under state law. We will vacate the order dismissing the state-law claims so that on retrial the court may dispose of them in light of the new disposition of the federal claims. *See Metro v. Elk County*, 872 F.2d 412 (3d Cir. 1989); *Englert v. City of McKeesport*, 872 F.2d 1144 (3d Cir.), *cert. den'd*, —— U.S. ——, 110 S.Ct. 149, 107 L.Ed.2d 108 (1989) (citing *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 348–50, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988)).

## VI.

The order of October 26, 1988 will therefore be reversed and the order of April 27, 1989 vacated. The case will be remanded to the district court for a new trial of Count I, the ERISA claim, in accordance with this opinion, and for further consideration of Counts II–VI, the pendent claims.