**MICHAEL REESE HOSPITAL AND MEDICAL CENTER,
Plaintiff–Appellant,**

v.

**SOLO CUP EMPLOYEE HEALTH BENEFIT PLAN and Solo Cup Company, Defendants–Appellees.**

No. 89–1186.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1990.

Decided April 9, 1990.

[black bar redaction]

Jay Conison, Jeffrey P. Lennard, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for plaintiff-appellant.

Francis M. Pawlak, Gerard D. Ring, Burke, Wilson & McIlvaine, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and MANION, Circuit Judges, and GRANT, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

This suit was brought by Michael Reese Hospital and Medical Center ("Reese") against the Solo Cup Employee Health Benefit Plan ("Plan") and Solo Cup Company ("Solo") to recover benefits from an employee welfare plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(f). According to the complaint, Ana Vucic ("Ana") is an employee of Solo and a participant in the Plan. Her daughter Marjana, a minor, is a beneficiary under the Plan.

On May 24, 1985, Marjana sought admission to Reese's Psychosomatic & Psychiatric Institute ("P & PI") for treatment of anorexia nervosa with secondary amenorrhea. Ana assigned to Reese the benefits payable by the Plan in connection with Marjana's hospitalization. Solo confirmed to Reese that the Plan made Marjana eligible for benefits in connection with her hospitalization and treatment at the P & PI. Marjana was hospitalized from May 24, 1985, to January 24, 1986. The complaint asserts that since she was not fully recovered on the date of her discharge, the discharge was conditioned on continuing outpatient therapy at P & PI, and she has followed this plan.

Reese was the assignee of benefits that the Plan was to pay in connection with Marjana's hospitalization and treatment. The complaint asserts that under the Plan, Solo is required to reimburse Reese for $91,314.73 (plus interest, costs, and attorney's fees) for the unpaid balance of its charges until Marjana's discharge.

Solo filed a motion for summary judgment on the ground that it had paid Reese for the first seven weeks of Marjana's hospitalization,[1] that further hospitalization was not justified, and that custodial care was not covered by the Plan. Applying an arbitrary and capricious standard of review, the district court entered summary judgment for Solo on December 23, 1988. Its opinion observed that after Solo first denied the claim, it retained the Illinois Foundation for Medical Review, which in turn retained Dr. Philip S. Epstein, an expert in treating anorexic patients, to review the entire medical file. In June 1986 Dr. Epstein concluded that the record did not justify Marjana's in-patient care beyond the first or second week of July 1985, six or seven weeks into her hospital stay.

A second medical opinion in this case came too late. Because of its untimeliness, Judge Hart refused to consider Dr. Paul E. Garfinkel's affidavit offered to support Reese's claim. The affidavit was not executed until July 14, 1988, whereas the Plan trustees had denied the claim on July 11, 1986.[2]

On a separate issue, the district court deemed it immaterial that Solo's December 5, 1985, initial denial letter contained insufficient information under 29 C.F.R.

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Solo originally denied payment for services rendered beyond the first thirty days, but later extended the period covered to seven weeks. Reese accepted payment for the first thirty days and rejected the tendered payment for the additional three weeks. Solo has refused to pay Reese's subsequent bills through Marjana's January 24, 1986, discharge.

2. At oral argument and in its briefs before us, Reese has not relied on the Garfinkel affidavit. Reese only appeals the standard of review (*de novo* as opposed to deferential). In this appeal Reese does not attack the district court's decision to limit the court's inquiry to the evidence that was before the Plan administrator, thus excluding the tardy Garfinkel affidavit.

§ 2560.503–1 in view of the complete review that Solo gave Reese's claim. The court also noted that Reese has not complained about the adequacy of Solo's second denial letter dated July 11, 1986.

Finally, the court rejected Reese's argument that the trustees of the Plan had a financial conflict of interest making their decision denying benefits suspect. This argument was rejected because (1) the Plan was funded by both Solo and its employees, (2) the trustees exercised no influence over Dr. Epstein, and (3) the Epstein report formed the basis for Solo's decision. We affirm.

Reese's principal argument is that the district court should have reviewed the claim *de novo* under *Bruch v. Firestone Tire & Rubber Co.,* — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), rather than using the arbitrary and capricious standard previously in effect. We reject Solo's contrary argument that *Bruch* was not entitled to retroactive application. In fact we did so *sub silentio* in *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047 (1989), except where " 'the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' " quoting from *Bruch,* 109 S.Ct. at 956. Other circuits have similarly applied *Bruch* retroactively. *E.g., Moon v. American Home Assur. Co.,* 888 F.2d 86, 88 (11th Cir.1989); *Orozco v. United Airlines, Inc.,* 887 F.2d 949, 952–954 (9th Cir. 1989); *Burnham v. Guardian Life Insurance Co.,* 873 F.2d 486, 489 (1st Cir.1989). Solo submits that the above *Bruch* exception should apply here because the Plan provides:

> The Company shall be the Named Fiduciary and Plan Administrator pursuant to the provisions of ERISA, and as such, the Company shall have authority to control and manage the operation and administration of the Plan. (Plaintiff's App. 34.)

However, we agree with Reese that this provision does not give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan within the meaning of the *Bruch* exception. See *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288, 291–292 (11th Cir.1989); *Moon,* 888 F.2d at 88. Therefore the Court will proceed to review this claim *de novo.*[3] Even under such a review, we agree with the district court that Reese's claim should be denied for the reasons given in Dr. Epstein's review. In his June 10, 1986, letter to the Illinois Foundation for Medical Review, Dr. Epstein observed that "the documentation in terms of illness severity and treatment intensity does not provide justification for psychiatric in-patient level of care beyond approximately the first 6–7 weeks of the stay." Supp.App.Tab. 11. After observing the deficiencies in Reese's supporting records, he concluded that there was no need for psychiatric in-patient care past the first several weeks of hospitalization and that Marjana did not need in-patient care beyond the first or second week of July 1985. His June 30, 1988, deposition fully supports these conclusions. Consequently, the Plan was justified in its decision to pay Reese for seven weeks' hospitalization.

Judgment affirmed.

---

**3.** In reviewing under the *de novo* standard, we follow the Third and Fourth Circuits. *Anderson v. Pittsburgh–Des Moines Corp.,* 893 F.2d 638, 639–640 (3d Cir.1990); *Sejman v. Warner–Lambert Co.,* 889 F.2d 1346, 1348 (4th Cir.1989), rehearing denied *en banc,* Nos. 88–2606, 88–2607 (January 5, 1990).