Gerald E. JACOBS, Anthony E. Beauto, Thomas S. Bender, Daniel R. Chapman, Mark R. Christenson, Donald F. Dame, David J. DeLeo, Arthur J. Fenstad, Robert G. Hoffner, Jr., Michael H. Holmquist, Michael A. Indihar, Floyd L. Jeske, Vernon E. Johnson, Mary Jane Keller, Personal Representative of the Estate of George F. Keller; Robert K. Kosmalski, Robert S. Lemire, Jay R. Mackie, Albert E. Maddern, Richard A. Maddern, Jeffrey W. Maida, Clarence R. Manz, David J. Mealey, Christine R. Meyer, Steven A. Moyer, William B. O'Brien, Donna J. Pingeon, Mark A. Pruse, Gerald Rude, Stanley C. Salmi, Rolf N. Schulz, Thomas J. Stark, Steven A. Stepec, James E. Stone, James D. Torstenson, Peter M. Vander Veer, Chris J. Viola, Dennis M. Wagner, and Paul Wahlstrom, Appellees/Cross-Appellants,

v.

PICKANDS MATHER & CO., a Delaware corporation; and Pickands Mather Services, Inc., a Delaware corporation, Appellants/Cross-Appellees.

Gerald E. JACOBS, Anthony E. Beauto, Thomas S. Bender, Daniel R. Chapman, Mark R. Christenson, Donald F. Dame, David J. DeLeo, Arthur J. Fenstad, Robert G. Hoffner, Jr., Michael H. Holmquist, Michael A. Indihar, Floyd L. Jeske, Vernon E. Johnson, Mary Jane Keller, Personal Representative of the Estate of George F. Keller; Robert K. Kosmalski, Robert S. Lemire, Jay R. Mackie, Albert E. Maddern, Richard A. Maddern, Jeffrey W. Maida, Clarence R. Manz, David J. Mealey, Christine R. Meyer, Steven A. Moyer, William B. O'Brien, Donna J. Pingeon, Mark A. Pruse, Gerald Rude, Stanley C. Salmi, Rolf N. Schulz, Thomas J. Stark, Steven A. Stepec, James E. Stone, James D. Torstenson, Peter M. Vander Veer, Chris J. Viola, Dennis M. Wagner, and Paul Wahlstrom, Appellees/Cross-Appellants,

v.

PICKANDS MATHER & CO., a Delaware corporation; and Pickands Mather Services, Inc., a Delaware corporation, Appellants/Cross-Appellees.

Gerald E. JACOBS, Anthony E. Beauto, Thomas S. Bender, Daniel R. Chapman, Mark R. Christenson, Donald F. Dame, David J. DeLeo, Arthur J. Fenstad, Robert G. Hoffner, Jr., Michael H. Holmquist, Michael A. Indihar, Floyd

---

L. Jeske, Vernon E. Johnson, Mary Jane Keller, Personal Representative of the Estate of George F. Keller; Robert K. Kosmalski, Robert S. Lemire, Jay R. Mackie, Albert E. Maddern, Richard A. Maddern, Jeffrey W. Maida, Clarence R. Manz, David J. Mealey, Christine R. Meyer, Steven A. Moyer, William B. O'Brien, Donna J. Pingeon, Mark A. Pruse, Gerald Rude, Stanley C. Salmi, Rolf N. Schulz, Thomas J. Stark, Steven A. Stepec, James E. Stone, James D. Torstenson, Peter M. Vander Veer, Chris J. Viola, Dennis M. Wagner, and Paul Wahlstrom, Appellees/Cross–Appellants,

v.

PICKANDS MATHER & CO., a Delaware corporation; and Pickands Mather Services, Inc., a Delaware corporation, Appellants/Cross–Appellees.

Nos. 90–5112 MN, 90–5125 MN and 90–5275 MN.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1990.

Decided May 16, 1991.

Stanley Weiner, Dallas, Tex., for appellants/cross-appellees.

Joseph J. Mihalek, Duluth, Minn., for appellees/cross-appellants.

Before McMILLIAN and FAGG, Circuit Judges, and STROM,* District Judge.

STROM, District Judge.

In these consolidated proceedings, Pickands Mather & Co. ("PM") and Pickands Mather Services, Inc. ("PMSI") appeal from separate orders of the United States District Court for the District of Minnesota[1] awarding thirty-eight (38) individuals severance pay, prejudgment interest, and attorney fees. We affirm.

## DISPOSITION BELOW

Employees of PMSI initiated this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1985) ("ERISA"), to recover, among other things, nearly $1,000,000 in severance pay from PM and PMSI. The lawsuit was not filed as a class action, but rather, each of the thirty-eight (38) employees sought recovery individually from PM and PMSI.[2] On May 4, 1988, the district court granted PM and PMSI summary judgment on the employees' state and common law claims, concluding that the claims were preempted by ERISA. On February 14, 1990, after a bench trial, the district court awarded the employees severance pay in the amount of $881,659.[3] On May 2, 1990, the district court awarded the employees prejudgment interest from September 1, 1986, through February 13, 1990, in the amount of $227,738.95, pursuant to 28 U.S.C. § 1961 (Supp.1990), and attorney's fees in the amount of $272,073.25, pursuant to 29 U.S.C. § 1132(g) (1985).[4]

## BACKGROUND

PM is a mining corporation that had entered into service contracts with certain companies to provide technical and administrative assistance in furtherance of the companies' management needs. PM performed many of these services through its wholly owned subsidiary, PMSI, which it formed in 1985. In December, 1985, PMSI negotiated a five-year management contract with Reserve Mining Company ("Reserve"). Consummation of the PM–Reserve contract on April 1, 1986, resulted in the permanent termination of over one-hundred (100) Reserve employees who had previously performed the services to be covered by the PM–Reserve contract. PMSI subsequently determined that it needed forty-four (44) new employees to staff these service functions and hired former Reserve employees to fill these positions.

Due to the impending bankruptcy of one of Reserve's owners, closure of the Reserve mine, and the subsequent filing of bankruptcy by Reserve, appellees were laid off in late July and August of 1986. When Reserve's trustee in bankruptcy rejected the PM–Reserve contract, PM and PMSI ceased to provide management services to Reserve.

The effective date of appellees' termination was August 31, 1986. Each appellee, thereafter, submitted written requests for severance pay. On August 28, 1986, PMSI advised all appellees, except Christine Meyer and Daniel Chapman, that it did not have information on the status of severance pay. On October 21, 1986, PMSI notified each appellee, except Meyer and Chapman, that it was examining the issue of severance pay and that it would respond as soon as answers were available. When PMSI failed to respond, appellees commenced this action to collect severance pay under PMSI's severance plan.

## DISCUSSION

Appellants' severance plan provides that "[s]everance will be paid on the basis of 2 weeks' pay for each year of service."

---

* The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

1. The Honorable Donald D. Alsop, Chief Judge, United States District Judge for the District of Minnesota.

2. The district court disregarded PM's corporate form and held it liable for any severance pay owed to appellees.

3. The severance award is the subject matter of the appeals in Nos. 90–5112MN and 90–5125MN.

4. The awards of prejudgment interest and attorney's fees are the subject matter of the appeal in No. 90–5275MN.

(App. 20C). Each PMSI employee had a "PM Date" in their personnel file that reflected the date the employee started working for PMSI. The "PM Date" was used by PM and PMSI to determine employee benefits. Reserve employees who transferred to PMSI in 1986 were attributed with a "PM Date" that reflected the date they started work with Reserve, not merely the date they began work with PMSI.

Because appellants' severance plan does not grant discretionary authority to the plan administrator to determine eligibility for benefits or to construe terms of the plan, the district court conducted a *de novo* review of PM and PMSI's denial of benefits, in accordance with *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The trial court found that appellants relied on the "PM date" assigned to each appellee in determining employee benefits, such as insurance and pension programs, and concluded that "service" within the meaning of the severance plan included appellees' years of service with Reserve, as well as the time they were employed by PMSI, and calculated appellees severance pay using the appellees respective "PM Dates."

■ On appeal, PM and PMSI first maintain that *Bruch* should not be applied retroactively. They argue, rather, that the district court should have applied the arbitrary and capricious standard which this court applied prior to the United States Supreme Court's decision in *Bruch*. *See, e.g., DeGeare v. Alpha Portland Indus.*, 837 F.2d 812, 814–15 (8th Cir.1988), *vacated and remanded*, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989).

We reject appellants' argument that *Bruch* should not be applied retroactively. This court has consistently applied *Bruch* retroactively *sub silentio*. *See Harper v. R.H. Macy & Co.*, 920 F.2d 544, 545 (8th Cir.1990); *Baxter v. Lynn*, 886 F.2d 182, 187–88 (8th Cir.1989); *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir.1989). Other circuits have similarly applied *Bruch* retroactively. *See, e.g., Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus.*, 900 F.2d 963, 965 n. 2

(6th Cir.1990); *Michael Reese Hosp. & Medical Center v. Solo Cup Employee Health Ben. Plan*, 899 F.2d 639, 641 (7th Cir.1990); *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 952–54 (9th Cir.1989). In addition, the Supreme Court has remanded cases for reconsideration in light of *Bruch*, clearly indicating the Court's intent that *Bruch* be applied retroactively. *See Adams v. Avco, Corp.*, 490 U.S. 1103, 109 S.Ct. 3151, 104 L.Ed.2d 1015 (1989); *DeGeare v. Slattery Group, Inc.*, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989); *Combustion Eng'g, Inc. v. Saporito*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989).

■ Appellants next contend that the district court erred in applying principles of contract law to interpret the severance plan. Appellants maintain that the plan should have been interpreted in accordance with principles of trust law, therefore, giving deference to PM and PMSI's intent at the time the severance plan was established. A careful review of *Bruch* aptly disposes of appellant's argument. While *Bruch* clearly mandates that trust law dictate the standard under which a plan is reviewed, *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956, a severance plan must be interpreted in accordance with contract principles. *Id.* at 112–13, 109 S.Ct. at 955; *Harper*, 920 F.2d at 545. "In other words, unless the plan language specifies otherwise, courts should construe any disputed language 'without deferring to either party's interpretation.'" *Wallace*, 882 F.2d at 1329 (quoting *Bruch*, 489 U.S. at 112, 109 S.Ct. at 955). "If a plan does 'not give the employer or administrator discretionary or final authority to construe uncertain terms,' a reviewing court should review the employee's claim as it would 'any other contract claim.'" *Id.*

PM and PMSI further argue that the district court erred in awarding severance pay to the appellees for years that they were employed solely by Reserve. Like the district court, we must review appellants' denial of benefits *de novo*. *Harper*, 920 F.2d at 545 (citing *Anderson v. Pittsburgh–Des Moines Corp.*, 893 F.2d 638,

639–40 (3d Cir.1990)). "The issue is 'simply one of contract interpretation.'" *Id.* (quoting *Anderson v. Alpha Portland Indus.*, 836 F.2d 1512, 1516 (8th Cir.1988). "In deciding whether the employees are entitled to severance benefits, 'we must begin by examining the language of the plan document[ ]. Each provision should be read consistently with the others [and] the terms must be construed to render none of them nugatory.'" *Id.* (quoting *DeGeare*, 837 F.2d at 816).

▆ The construction and effect of a contract presents a question of law, unless an ambiguity exists. *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn.1990). If a contract's terms are ambiguous or incomplete, and extrinsic evidence is examined, construction of a contract becomes a question of fact. *In re Minnesota Power & Light Co.*, 435 N.W.2d 550, 563 (Minn.App. 1989). Under Minnesota law, "[a] contract provision is ambiguous if, judged by its language alone, it is reasonably susceptible to more than one meaning." *Rick v. B.D. M.S., Inc.*, 347 N.W.2d 65, 66 (Minn.App. 1984).

▆ The resolution of the present issue turns on whether appellees' years of service with Reserve are recognized as "service" within the meaning of the PMSI severance plan. As the term "service" is reasonably susceptible to more than one meaning and is undefined in the plan, the term is ambiguous.

▆ Upon review of the evidence, we find that "service" within the context of the severance plan contemplates service at PMSI and a former employer, like Reserve, which was a party to a PM management agreement. This finding is buttressed by the manner in which appellants presented the benefit programs to potential Reserve transferees, as well as by PM's interpretation of the plan in practice. Before they transferred to PMSI, appellees had numerous meetings with appellants, wherein they discussed PMSI's benefit packages. Appellants' witnesses testified that the meetings were upbeat, de-emphasizing any negative implications of the transfer. Some appellees testified that they were told that their Reserve seniority would carry over to PMSI for the purposes of benefits, including severance pay.

When appellees were offered employment at PMSI, appellants made it clear that refusal to transfer would result in the forfeiture of any severance benefits they had accrued under the Reserve severance plan. Appellees were never informed that acceptance of the transfer to PMSI would result in the forfeiture of any rights they had to accrued severance pay. Rather, a memorandum from Gordon Carlson, a vice president at PM, entitled "Guidelines for Transfer" stated that "1. Employees offered assignment to PMSI jobs are not eligible for termination pay. 2. For the purpose of seniority date—Reserve employment record will carry over to P.M.S.I. for vacations, etc." (Plaintiff's Exhibit 3).

PM's past practices in applying the PMSI severance plan also demonstrate that PM intended to honor appellees' years of service at Reserve for purposes of severance pay. Appellants admit that, in the past, they interpreted service to include years at other employers, specifically the Hibbing Taconite ("Hibbing") or Erie Mining ("Erie") companies. PM and PMSI attempt to distinguish this anomaly by claiming that severance benefits were paid to former Hibbing and Erie employees because PM had a financial interest in these companies, and thus, by giving continuous service credit to these PMSI employees, PM was rewarding employees for service that had benefited PM.

We find this explanation untenable, given the testimony of PM's representatives who stated that all expenses incurred by PMSI in the management of a property, including severance pay, were charged directly back to the property. Thus, Hibbing and Erie paid the entire cost of any severance pay, not PM. PMSI never expected to bear the ultimate expense of severance payments, because it could typically charge the severance payments back to Reserve. We agree with the district court's observation that it was only when Reserve went bankrupt, and it became apparent that Reserve would not reimburse PMSI for sever-

ance pay, that appellants modified their interpretation of the plan. Indeed, PM representatives testified that, had Reserve remained a viable entity and had PMSI been required to pay severance pay to transferred Reserve employees, it would have billed Reserve for this expense.

PM's personnel files also reflect that PM intended "years of service" to encompass years at Reserve. PM representatives testified that, in the past, the computation of "years of service" an employee had worked for benefit purposes was determined by subtracting an employee's "PM Date" from the employee's date of termination. In the case of appellees, their "PM Date" reflected the year they began working for Reserve, not the year they started at PMSI.

Regardless of whether PM and PMSI representatives intended "service" to mean only service with PMSI or a company in which it owned an interest, they failed to communicate this meaning to appellees. Rather, appellees were led to believe that PMSI intended to honor their years of service at Reserve for purposes of severance pay. Without deferring to either party's interpretation of the plan, we conclude that appellees are entitled to severance payments from appellants for the period of their service with Reserve as well as the period of their service with PMSI.

■ Appellants also take issue with the district court's conclusion that appellees Christine Meyer and Daniel Chapman were employees of PMSI. The factors to be considered in determining the existence of an employment relationship are:

(1) the right to control the means and manner of performance;

(2) the mode of payment;

(3) the furnishing of materials or tools;

(4) the control of the premises where the work is done; and

(5) the right of the employer to discharge.

State ex rel. Johnson v. Porter Farms, Inc., 382 N.W.2d 543, 549 (Minn.App.1986) (quoting Wangen v. City of Fountain, 255 N.W.2d 813, 815 (Minn.1977)). "The most important of these factors is the right to

control the means and manner of performance." Id.

■ Appellants concede that, although Meyer and Chapman would have become employees of PMSI, the hiring process was interrupted by the unanticipated shutdown of Reserve. Appellants contend that Chapman and Meyer remained on Reserve's payroll until July, 1986, when Reserve collapsed, and they were never on PM's payroll. PMSI representatives stated that Chapman's paperwork was forwarded to PM headquarters in Cleveland, Ohio, but the bankruptcy of Reserve's owner intervened, and PMSI never received approval of Chapman's employment. Appellants maintain that Meyer's paperwork was never sent to the Cleveland home office for approval because of the bankruptcy, as well as because of the lack of written recommendation from Meyer's prospective supervisor, John Salo.

The evidence reflects that Salo offered Meyer employment at PMSI on July 1, 1986. Meyer accepted that day and began work for PMSI on July 6, 1986. Similarly, Chapman was offered work at PMSI and accepted and began work on July 3, 1986. Meyer and Chapman were supervised and directed by PM and PMSI employees. PMSI determined Meyer's and Chapman's mode of payment, furnished them materials and tools, controlled the premises where they worked, and had the right to discharge them.

Although Meyer and Chapman testified that they understood that Reserve was ultimately paying their salaries, their payroll was actually issued by direct deposit from PMSI. The only change in the payroll that had failed to be accomplished once Meyer and Chapman were hired by PMSI consisted of changing their employee payroll number. This was a task to be performed by PM employees who admitted at trial that they simply did not finish the paperwork. The district court found that it was only when PM learned that Reserve's owner had declared bankruptcy that PM claimed that Meyer and Chapman were never formally hired by PMSI. The district court found

that PM took such action to avoid any liability owed Meyer and Chapman as their employer. We cannot say that the district court's finding that Meyer and Chapman were PMSI employees was clearly erroneous.

Appellants further claim that the district court erred in awarding severance pay to twenty-four (24) appellees who did not testify at trial. However, given that PM and PMSI admitted that its employee benefit package applied to all PMSI employees, requiring all thirty-eight (38) plaintiffs to testify would have certainly resulted in undue delay and needless presentation of cumulative evidence. *See* Fed.R.Evid. 403.

 PM and PMSI next assert that it was inequitable for the district court to award prejudgment interest and attorney's fees to appellees for that period of time prior to February 21, 1989, the date of the Supreme Court's decision in *Bruch*.[5] Appellants argue that *Bruch* was a dramatic change in the law and further maintain that, under the arbitrary and capricious standard formally adhered to by this court, their denial of severance pay would have been upheld.

Appellants' contention that the denial of severance pay would have been upheld under a different standard is purely conjectural and, indeed, unsupported by the record. In addition, *Bruch* merely altered the standard we must adhere to in reviewing the denial of severance benefits. It did not alter the requirement that the severance plan be interpreted like any other contract. An award of attorney's fees and prejudgment interest, therefore, would not be inequitable. *See Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984).

 PM and PMSI further argue that the attorney's fees awarded by the district court were neither properly supported by affidavits nor sufficiently specific or accurate. Appellants maintain that the district court erred in failing to exclude fees claimed by appellees for time devoted to unsuccessfully opposing appellants' pre-trial motion for partial summary judgment.

 The award of attorney's fees under ERISA is discretionary. *Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan,* 874 F.2d 496, 500 (8th Cir. 1989). In exercising its discretion, a Court should consider the following factors:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy and award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Lawrence v. Westerhaus,* 749 F.2d 494, 495 (8th Cir.1984) (quoting *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255 (5th Cir. 1980)).

We are satisfied that the district court carefully considered the criteria enunciated in *Westerhaus* and the evidence adduced by the parties, as well as the significance of the overall relief obtained by appellees and the relationship of appellees' alternative claims to their successful claims for severance pay. *See Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The district court did not abuse its discretion in awarding attorneys fees to the appellees.

Appellees cross-appeal, contending that the district erred in dismissing their state and common law claims. Appellees request, however, that we disregard their cross-appeal should the decision of the district court awarding severance benefits be affirmed. Accordingly, we will not address appellees cross-appeal.

Having conducted a *de novo* review of appellants' denial of severance benefits and carefully reviewed appellants' assignments

---

**5.** The district court awarded prejudgment interest from September 1, 1986, the date severance pay was due under the plan, through February 13, 1990, the date judgment was entered.

of error, we affirm the judgment of the district court.