Clatyon E. SIEMERS, Plaintiff,

v.

The SEVERANCE PAY PLAN OF
CONOCO, INC., Defendant.

No. 7:CV95–5012.

United States District Court,
D. Nebraska.

May 3, 1996.

Joy A. Shiffermiller, North Platte, NE, for plaintiff.

James C. Zalewski, Demars, Gordon Law Firm, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

CAMBRIDGE, Chief Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation (filing 17), and the objections to such Report and Recommendation (filings 18 and

20) filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

The Court has conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a *de novo* review of the portions of the Report and Recommendation to which objections have been made and finds that the Report and Recommendation should be adopted. The Magistrate Judge has correctly concluded that issues of material fact remain in this case, precluding the entry of summary judgment for either party. Accordingly,

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (filing 17) is adopted;

2. The Defendant's objections (filing 18) are overruled;

3. The Plaintiff's objections (filing 20) are overruled;

4. The Defendant's motion for summary judgment (filing 11) is denied; and

5. The Plaintiff's motion for summary judgment (filing 13) is denied.

### REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is defendant's motion for summary judgment (filing 11) and plaintiff's cross motion for summary judgment (filing 13). For reasons discussed more fully below, I shall recommend that the motions be denied.

### BACKGROUND

Between September 14, 1959 and September 30, 1994 plaintiff worked for several companies that successively operated the petroleum tank operation in North Platte, Nebraska. (Filing 5, Amended Complaint, at ¶¶ 4–5; Filing 6, Answer, at ¶ 4; Filing 11, Exhibit 1, at 9:11–13:12). In March 1986 Continental Pipe Line Co., a wholly owned subsidiary of Conoco, became the owner and operator of the petroleum tank operation and, as a result, Conoco became plaintiff's employer. (Amended Complaint, at ¶¶ 5–6; Answer, at ¶¶ 5–6). Plaintiff was provided an employee manual which outlined benefits available to him as an employee of Conoco Inc., including pension and profit sharing, vacation, retirement benefits, and a severance pay plan. (Amended Complaint, at ¶ 7; Answer at ¶ 7). On September 30, 1994 plaintiff's position with Conoco was eliminated due to a closing. (Amended Complaint, at ¶ 9; Answer, at ¶ 9). Under the severance pay plan plaintiff was entitled to the equivalent of three weeks' pay for every "completed year of service" up to a maximum of 72 weeks. (Amended Complaint, at ¶ 10; Answer at ¶ 10; Filing 11, Exhibit 2). Defendant has paid plaintiff 24 weeks' worth of severance benefits representing employment from March 1, 1986 to September 30, 1994. (Amended Complaint, at ¶ 11; Answer, at ¶ 11).

On April 20, 1995 plaintiff filed this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"),[1] alleging that he is entitled to additional severance benefits based on his employment with the companies that operated the North Platte petroleum tank prior to Conoco. On November 1, 1995 defendant filed a motion for summary judgment. (Filing 11). On November 20, 1995 plaintiff filed a cross motion for summary judgment. (Filing 13).

### DISCUSSION

Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505

---

1. Under the civil enforcement scheme of ERISA a beneficiary may sue "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987).

(1986). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510. A "genuine issue" regarding a material fact exists "if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Id.*

■ Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law. *Greeno v. Little Blue Valley Sewer Dist.,* 995 F.2d 861, 863 (8th Cir.1993). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will·bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Defendant contends that it is entitled to summary judgment because the written severance pay plan provided for severance pay benefits only from the date of acquisition as an employee of Conoco. (Defendant's Brief, at pp. 11–16). Plaintiff counters that he is entitled to summary judgment because the severance pay plan provides for payment of severance pay benefits based, not only on years of employment with Conoco, but also on total years of employment in the petrole-

um industry. (Plaintiff's Brief, at pp. 2–7). Before considering these contentions, I shall address the appropriate standard of review to be applied when considering the denial of severance pay benefits under section 1132 of ERISA.

### Standard of Review

■ The Supreme Court has stated that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). If the plan vests such discretion in the administrator, a more deferential standard of review—abuse of discretion—applies when considering the administrator's denial of benefits. *Id.* at 111–113, 109 S.Ct. at 954–56; *Cox v. Mid–America Dairymen, Inc.,* 13 F.3d 272, 274 (8th Cir.1993). Such discretion is vested where the plan contains "explicit discretion-granting language." *Bounds v. Bell Atlantic Enterprises F.L.T.D. Plan,* 32 F.3d 337, 339 (8th Cir.1994); *see e.g., Cooper Tire & Rubber Co. v. St. Paul Fire & Marine,* 48 F.3d 365, 371 (8th Cir.) (plan gave administrator power to "construe and interpret" the pertinent provision), *reh'g and suggestion for reh'g en banc denied, cert. denied,* —— U.S. ——, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995); *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994) (plan stated that employer "shall be solely responsible for the administration and interpretation of" the plan); *Lutheran Med. Ctr. v. Contractors Health Plan,* 25 F.3d 616, 620 (8th Cir.1994) (plan provided that "benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine"); *Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1437 (8th Cir.) (plan gave administrators power to "define and amend the terms of the Plan and Trust, to construe the Plan and the Trust and to reconcile inconsistencies therein"), *reh'g and suggestion for reh'g en banc denied* (1993), *appeal after remand,* 42 F.3d 1394 (1994).

Defendant contends that the more deferential standard should be applied in this case.[2] (Defendant's Resistance Brief, at p. 5). However, defendant fails to point to any explicit language in the severance pay plan or elsewhere in the employee benefits manual granting the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch, supra,* at 115, 109 S.Ct. at 956–57. While the plan clearly indicates that the administrator is responsible for processing all claims under the plan, (Filing 14, Exhibit A, "Other Important Information," at p. 1), it contains no "explicit discretion-granting language." *Bounds, supra.* In the absence of such language, the deferential standard does not apply. *Id.* I therefore review the denial of severance benefits *de novo. Bruch, supra.*

### Interpretation of the Plan

The severance pay plan at issue in this case provides in pertinent parts, as follows:

**Amount of Severance Pay**

Severance pay benefits are equal to 2 weeks' pay for each *completed* year of service (based on continuous or equated employment date) up to a maximum of 52 weeks' pay. . . .

**Enhanced Severance Pay**

From March 1, 1992, through June 30, 1994, severance benefits have been enhanced to provide up to 3 weeks' pay for each full year of completed service for years 1 through 20, and 2 weeks' pay for each full year of completed service for years 21 through 26. The maximum benefit is 72 weeks' pay, and the minimum benefit is 8 weeks' pay. The pay basis for computing severance benefits remains the same.

(Filing 14, Exhibit A, Severance Pay Plan, at 2).[3]

---

**2.** While defendant asserts that the "arbitrary and capricious" standard applies, the proper deferential standard of review is the "abuse of discretion" standard. *Cox,* 965 F.2d 568, at 572 n. 3. However, as the Eighth Circuit has observed, there is little difference between the "abuse of discretion" and "arbitrary and capricious" standards. *Lutheran Med. Ctr., supra,* at 620 n. 2.

**3.** The employee manual from which this language was taken provides that it contains only

Plaintiff claims that, under the foregoing language, he is entitled to severance pay benefits equal to 3 weeks' pay for each year of his employment in the petroleum industry, from 1959 to 1994, including years worked for companies other than Conoco. In support of his claim plaintiff cites to the phrase "equated employment date," contending that it means that date on which an employee began working in the petroleum industry, whether with Conoco or some other company.

Defendant concedes that plaintiff is entitled to severance pay benefits equal to 3 weeks' pay for each year of completed service, but contests plaintiff's claim that his employment with petroleum companies other than Conoco should be included in the calculation of years of service. Defendant contends that the phrase "equated employment date" refers to a date which applies only to employees who previously worked for Conoco, then left and returned to employment at Conoco.

I first note that where, as here, a severance plan covered by ERISA does not expressly give the employer or the administrator discretionary authority to construe uncertain terms, the plan should be interpreted according to ordinary contract principles. *Bruch, supra,* at 112–113, 109 S.Ct. at 955–56; *Jacobs v. Pickands Mather & Co.,* 933 F.2d 652, 656 (8th Cir.1991). While those principles are to be gleaned from "federal common law," a court may look to state contract law for guidance. *Equitable Life Assur. Soc. of U.S. v. Crysler,* 66 F.3d 944, 948–49 (8th Cir.1995); *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995); *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150, 153–54 (8th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991); *see Jacobs, supra* (looking to

---

"Summary Plan Descriptions" and not the "official legal documents" governing the issues. (Filing 14, Exhibit A, at p. 2; *see also* Filing 11, Exhibit 4, at 48:23–49:5 (intimating that booklet contains only abbreviated form of the actual plan)). However, neither defendant nor plaintiff has submitted any such "official legal documents."

Minnesota state law of contracts for guidance).

When interpreting an ERISA severance plan, a court must begin by examining the language of the plan document. *Harper v. R.H. Macy & Co., Inc.*, 920 F.2d 544, 545 (8th Cir.1990), *reh'g denied* (1991); *Anderson v. Alpha Portland Indus.*, 836 F.2d 1512, 1516 (8th Cir.1988), *cert. denied*, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). Each provision in the plan document should be read consistently with others and should be construed so as not to render others nugatory. *Harper, supra.* Where the intent of the parties is evident from the plain language of a provision in the plan, interpretation of the provision may be resolved as a matter of law. *See Loc. U. No. 150–A, United Food v. Dubuque Packing*, 756 F.2d 66 (1985) (construction of contract ordinarily constitutes a question of law).

In this case, the meaning of "equated employment date" is not ascertainable by simply reading the plain language of the phrase. There is no definition of the phrase in the severance pay plan, or elsewhere in the employee benefits manual. (*See* Filing 11, Exhibit 2; Filing 14, Exhibit A). Further, the context in which the phrase appears provides little insight into its meaning, other than the fact that an "equated employment date" is apparently different than a "continuous" employment date. The plain language of the plan thus permits both interpretations offered by the parties. As such, the phrase "equated employment date" is ambiguous. *Kropp v. Grand Island Public School Dist. No. 2*, 246 Neb. 138, 141, 517 N.W.2d 113 (1994) ("[a] contract is ambiguous when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings").

Where a provision in a plan covered by ERISA is ambiguous, extrinsic evidence may be used to determine the meaning of that provision. *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 657 (8th Cir.), *reh'g denied* (1992); *Anderson, supra* at 1517; *De-Geare*, 837 F.2d 812, 816. There is extrinsic evidence before the court which arguably lends support to plaintiff's proposed interpretation of "equated employment date." First, another employee of Conoco, Dale Childs, was paid severance benefits based on years worked for petroleum companies other than Conoco. (Filing 11, Exhibit 1, at 19:2–11, 24:10–26:22; Exhibit 4, at 33:11–34:6). Second, a document entitled "Equated Employment Dates" lists plaintiff's name alongside the date "9/14/59," which is the date plaintiff began working in the petroleum industry for companies other than Conoco. (Filing 11, Exhibit 5, at p. 2). Third, two interoffice Conoco memoranda use the phrase "equated employment date" in the context of employees who previously worked for companies other than Conoco. (Filing 11, Exhibit 3, at pp. 1–2; Exhibit 5, at p. 1). Fourth, in a letter dated September 14, 1994, the President and Chief Executive Officer of Conoco congratulated plaintiff on the "35th anniversary of [his] employment with Conoco." (Filing 14, Exhibit B, at p. 2). Fifth, in a memorandum dated September 22, 1994, the Conoco director of operations congratulated plaintiff on receiving a "35 Year Service Award." (Filing 14, Exhibit B, at p. 1). Sixth, a personal benefit report lists plaintiff's "employment date" as "9/14/59." (Filing 14, Exhibit C, at p. 2). Seventh, an "electronic personnel action form" indicates that plaintiff is entitled to 72 weeks of severance pay, which is the amount which would be due if his beginning employment date were deemed to be in 1959. (*Id.* at Exhibit D).

There is also extrinsic evidence before the court which supports defendant's proposed interpretation of "equated employment date." Most notably, the administrator of the plan, Robert Clarke, states that the phrase, as used in the severance pay plan, refers to a date which applies only to employees who previously worked for Conoco, then left and returned to employment at Conoco. (Filing 15, Exhibit 9). He states that the "equated employment date" for such an employee is based upon the aggregation of his current and previous service at Conoco. (*Id.*) There is also evidence indicating that an error accounted for the additional severance pay given to Dale Childs for the years worked at other companies (Exhibit 4 at 32:4–16), and that an error similarly accounted for the

"electronic personnel action form" showing plaintiff as being entitled to 72 weeks of severance pay. (Filing 11, Exhibit 4, at 55:9–56:6.) Further, there is evidence that the interoffice memoranda using the phrase "equated employment dates" in the context of employees who previously worked for companies other than Conoco, pertained only to vacation pay and service awards, and that those same memoranda clearly stated that severance pay was not to be calculated in the same fashion as vacation pay and service awards.[4]

Where extrinsic evidence must be examined to determine the intent behind an ambiguous contract provision, a question of fact exists. *Jacobs, supra*, at 657; *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1353 (8th Cir.1980); *see Plambeck v. Union Pacific R.R. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). A consideration of extrinsic evidence is necessary in this case to determine the intended meaning of the phrase "equated employment date." Thus, there remains a question of fact. Further, that determination is material to the resolution of plaintiff's claim for severance benefits. I therefore conclude that a genuine issue of material fact exists in this case. As such, I shall recommend that the motions for summary judgment be denied.[5]

**IT THEREFORE HEREBY IS RECOMMENDED** to the Honorable William G. Cambridge, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) that defendant's motion for summary judgment (filing 11) and plaintiff's motion for summary judgment (filing 13) be denied.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated March 12, 1996.

---

4. I note that there is no evidence as to why the phrase "equated employment date" seemingly has different meanings depending on the context in which it appears.

5. Defendant's brief contains a lengthy discussion as to why plaintiff should not prevail on an estoppel theory based on the payment of severance pay to Childs. (Defendant's Brief, at pp. 16–27). However, in his brief, plaintiff states that "the evidence offered ... is not offered to establish any kind of estoppel" but rather "is offered to show what a reasonable interpretation of the plan is." (Plaintiff's Brief, at p. 7). As plaintiff raises no claim based on estoppel, I shall not address any such claim.