Chester DeGEARE, et al., Appellants,

v.

ALPHA PORTLAND INDUSTRIES, INC., and The Equitable Life Assurance Society of the United States, Appellees.

No. 87–1170.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1987.

Decided Jan. 26, 1988.

Rehearing Denied March 3, 1988.

---

Jay E. Sushelsky, St. Louis, Mo., for appellants.

Thomas E. Wack, St. Louis, Mo., for appellees.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.[*]

FLOYD R. GIBSON, Senior Circuit Judge.

Plaintiffs appeal from the judgment of the district court[1] in favor of Alpha Portland Industries, Inc. (Alpha) and The Equitable Life Assurance Society of the United States (Equitable) in this case involving the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA). Plaintiffs are a class of former salaried employees of Alpha's cement division who retired prior to May 1, 1982. This suit resulted from Alpha's decision to terminate all retiree health and life insurance benefits on May 1, 1982. Plaintiffs alleged that the welfare benefits vested upon retirement and thus were not terminable. After a bench trial the district court held that Alpha, as plan administrator, did not act arbitrarily and capriciously when it terminated retiree welfare benefits because the evidence did not show that the benefits were vested for the lifetime of the retirees. Because we agree that plaintiffs' benefits are not vested, we affirm the judgment of the district court except as to the matter of the refunded insurance premiums.

## I. BACKGROUND

The district court's extensive factual findings appear at 652 F.Supp. 946 (E.D. Mo.1986). Plaintiffs do not take issue with the facts as found by the district court. Although Alpha unilaterally began providing insurance and health benefits for its salaried non-union employees in 1946, plaintiffs primarily rely on language appearing in the 1973 and later plan documents in support of their argument that their benefits are vested for life.

In 1973, 1976, and 1978 Alpha distributed formal plan documents describing its insurance and health programs. Each program document provided that:

Commencing on and after the Effective Date, except as stated otherwise, the Company will provide for * * * all Retirees, retired on or after the Effective Date, and their Dependents the Group Insurance Program set out herein. Insurance coverages under the Prior Programs not hereinafter provided shall be continued to the extent applicable to Retirees and their Dependents in accordance with the provisions of the Prior Programs as if fully set out herein and as the same may now or hereafter be amended, modified or supplemented.

In November 1977 Alpha sent to its salaried retirees a document captioned "Retirement Income Plan–Insurance and Health Program–Summary Plan Description for

---

[*] The Honorable C. Arlen Beam, United States Chief District Judge for the District of Nebraska at the time this case was submitted, has since been confirmed as a circuit judge of this court.

[1] The Honorable William C. Hungate, United States District Judge for the Eastern District of Missouri.

Retired Salaried Employees." The document stated, in part:

**Circumstances Which Could Result in Benefit Loss**—Since you have completed all of the plans' eligibility requirements for the benefits you are now receiving or are scheduled to receive—as explained to you when your retirement commenced—the only possible event in which you could lose your benefits or part of your benefits under the plans would be if the plans were terminated. If the plans were ever to be terminated, the benefits to be provided thereafter would be limited to those which could be provided by the available assets of the retirement plan, as allocated in accordance with the requirements of the new law, and the retirement plan insurance * * * While Alpha hopes to be able to maintain the plans indefinitely, it must necessarily reserve the right to terminate the plans should business conditions ever warrant it.

In January 1978 active, but not retired, Alpha salaried employees were provided a summary plan description (hereinafter "1976 SPD") which provided in part, that "[i]f you retire with 10 or more years of service on or after January 1, 1976, you will continue to receive the Hospital/Surgical and Major Medical portion of plan coverage. Coverage will continue for the remainder of your life."

In July 1978 an SPD containing the identical language was distributed to active salaried employees. This document (hereinafter "1978 SPD") applied "to those actively employed or who retire on or after May 1, 1978."

Both the 1976 and 1978 SPDs also state that "[t]he Company expects and intends to continue this plan indefinitely but reserves the right to end or amend it. If the plan is terminated by the Company, benefits will be paid for bills incurred prior to the termination date of the plan and for individuals whose coverage would continue due to disability."

At trial the district court also considered extrinsic evidence to determine whether benefits are vested. For example, Alpha's personnel manager, Robert Bonstein, routinely sent a letter to employees who were about to retire stating that welfare benefits "will continue" or "will be continued", but not stating for how long. The court also considered live and deposition testimony that Bonstein told employees at two of Alpha's cement plants scheduled to be closed that they should pursue other means of obtaining insurance. Bonstein testified that he never promised any salaried employee or retiree lifetime welfare benefits. The court also discredited the testimony of a former Alpha vice-president which stated that providing lifetime benefits was Alpha's policy.

Further, the court considered the conduct of the plaintiffs at various times and found it to be inconsistent with their theory that benefits are vested. For example, Alpha received no objections from retirees to the statements in the 1976 and 1978 SPDs reserving to Alpha the right "to end or amend" the plan. Also, no one objected when Alpha began coordinating its benefits with other benefits to which the retirees were entitled (such as Medicare), thereby reducing the amount to be paid by Alpha. Similarly, Alpha received no objections to Bonstein's suggestions that employees of soon-to-be-closed cement plants should look elsewhere for insurance coverage.

## II. DISCUSSION

### A. Standard of Review

■ As a threshold issue plaintiffs argue that the district court erroneously gave deference to the plan administrator's decision to terminate benefits. The court held that "the judgment of the plan administrator prevails so long as it is not arbitrary and capricious." 652 F.Supp. at 961. Initially, we note that plaintiffs invited the district court to apply this standard. Further, the clear weight of federal authority supports giving deference to the plan administrator's decision if it is based on factual considerations or the language of the plan. *See, e.g., Bance v. Alaska Carpenters Retirement Plan*, 829 F.2d 820, 823 (9th Cir.1987); *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir.

1987); *Holt v. Winpisinger,* 811 F.2d 1532, 1535–36 (D.C.Cir.1987); *Anderson v. Ciba–Geigy Corp.,* 759 F.2d 1518, 1521 (11th Cir.), *cert. denied,* 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); *Jestings v. New England Tel. & Tel. Co.,* 757 F.2d 8, 9 (1st Cir.1985); *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197, 204 (4th Cir.1984); *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 313–14 (5th Cir.1982); *Quinn v. Burlington Northern, Inc.,* 664 F.2d 675, 678 (8th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982); *Carter v. Central States, etc.,* 656 F.2d 575, 576 (10th Cir.1981); *Wardle v. Central States, etc.,* 627 F.2d 820, 823–24 (7th Cir. 1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Riley v. MEBA Pension Trust,* 570 F.2d 406, 410 (2d Cir. 1977). In the Third Circuit, however, no deference is given where the plan administrator is also the employer and the issues involve contract interpretation. *Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 144 (3d Cir.1987).

In the present case we believe the district court correctly gave deference to the plan administrator's decision. In any event, we believe the administrator and the district court correctly construed the plan documents as not providing retirees with lifetime welfare benefits.

### B. Merits

■ Plaintiffs argue that the district court erroneously placed on them the burden of proving that they are entitled to lifetime benefits. They further argue that the burden should be on Alpha to justify the termination and that their benefits vested as a matter of law upon retirement because welfare benefits are status benefits. Precisely the same arguments were made by the plaintiffs and rejected by this court in *Anderson v. Alpha Portland Indus.,* 836 F.2d 1512 (8th Cir.1988). In *Anderson* we held that the burden is on

plaintiffs to prove that they are entitled to lifetime benefits and that no inference of an intent to vest can be presumed from the fact that the benefits are retirement benefits.[2] *Id.,* at 1516–17.

Plaintiffs argue that the case relied upon by the district court in allocating the burden of proof, *UFCW Local 105–A v. Dubuque Packing Co.,* 756 F.2d 66 (8th Cir. 1985), is inapplicable because it involved a collective bargaining agreement whereas the present case does not. We are not persuaded that the form in which the plan appears or the procedure it goes through prior to adoption should have any bearing on the burden of proof. Regardless of whether the plan documents were the subject of negotiation, the plaintiffs must establish their case by a preponderance of the evidence if they are to prevail. Further, it is especially important that plaintiffs bear the burden of proof in cases such as this where the benefits in question are unilaterally provided by the employer. Accepting plaintiffs' argument would lead to the anomalous result that Alpha would have to prove a negative—that it did not promise lifetime benefits—everytime plaintiffs choose to file a lawsuit.

The main issue in this case simply is whether plaintiffs proved at trial that their benefits are vested. If the benefits are vested, then Alpha violated ERISA when it terminated them. If they are not, however, Alpha is not obligated to provide benefits for the remainder of the retirees' lives and did not violate ERISA when it terminated the benefits. Determining the duration of Alpha's obligation requires an examination of the plan documents and, if necessary, relevant extrinsic evidence.

Although the benefits in this case were unilaterally provided by Alpha, we believe that ordinary contract construction principles should be used to determine if the benefits are vested. Stripped of all its complexities, this case will turn on whether

---

**2.** Plaintiffs' citation to *Allied Chemical Workers v. Pittsburgh Glass,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398–99 n. 20, 30 L.Ed.2d 341 (1971), at best begs the question before us in the present case. In note 20 the Court stated, in part, that "[u]nder established contract principi-

ples, *vested retirement rights* may not be altered without the pensioner's consent." (Emphasis added). In the present case, however, the issue is whether the retirees' welfare benefits *are vested.*

Alpha promised to continue paying retiree welfare benefits until the death of the retiree. Absent such a promise, Alpha has no legal obligation to continue providing benefits.

■ When determining the duration of plaintiffs' benefits we must begin by examining the language of the plan documents. *Anderson,* 1517. Each provision should be read consistently with the others and as part of an integrated whole. Further, the terms must be construed so as to render none of them nugatory and to avoid illusory promises. *International Union, United Auto., Aero., and Agric. Implement Workers of America v. Yard–Man, Inc.,* 716 F.2d 1476, 1479–80 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). If examination of the plan documents reveals ambiguities, extrinsic evidence may be considered. *Anderson,* at 1517; *Dubuque Packing,* 756 F.2d at 69.

■ The district court held that the language of the plans was ambiguous, but that the extrinsic evidence showed that benefits are not vested. The court placed great weight on the fact that no one objected when Alpha coordinated benefits or when Bonstein notified employees that they should seek alternatives to their Alpha insurance coverage. 652 F.Supp. at 961. Also, the court noted, the plan documents reserved in Alpha the right to end or amend the plan.

Much of the plan language in the present case is similar to that found in *Anderson.* For example, the plans in *Anderson* provided that their terms are subject to amendment, modification, or supplementation. Similar language is found in the present case. In *Anderson* we held that such language "is inconsistent with plaintiffs' argument that benefits were vested for life." *Anderson,* at 1518–19. The plan in *Anderson* also provided for continuation of benefits conferred under previous plans. This, we held, would be unnecessary if benefits vested upon retirement. *Id.* Likewise, we hold that the continuation language in the present case does not support

plaintiffs' argument that they are entitled to lifetime benefits.

We believe the district court correctly construed the language in the plan documents. We also are convinced that the district court's finding that the extrinsic evidence did not show an intent to provide lifetime benefits was not clearly erroneous. *See Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1353–54 (8th Cir.1980) (interpretation becomes question of fact when based on credibility of extrinsic evidence or choice between reasonable inferences to be drawn therefrom).

■ We are mindful of plaintiffs' argument that ambiguities in the plan documents should be construed against Alpha, but do not believe that this will alter the outcome of this case. Construing ambiguities against the drafter should be the last step of interpretation, not the first step. Using plaintiffs' analysis, the instant we determine that the plan documents are ambiguous, they win. We disagree. Ambiguities should be construed against the drafter only if after application of ordinary rules of construction and consideration of extrinsic evidence, the ambiguities remain. If we can ascertain the meaning of the language using ordinary principles of interpretation, there is no need to construe it in any other manner. We are satisfied that the district court reached the only reasonable conclusion regarding interpretation of the plan documents. Consequently it would be inappropriate to construe the documents in plaintiffs' favor.

■ Finally, we are troubled by plaintiffs' argument that they are owed an accounting by Equitable and Alpha for rate refunds paid by Equitable to Alpha on Alpha's group life insurance policy. Plaintiffs contend that the premium refunds include money they contributed for optional additional life insurance. We agree with the district court that Equitable is not a fiduciary as contemplated by ERISA. However, assuming plaintiffs are correct, Alpha has been unjustly enriched to the extent that the refunds include money contributed by the plaintiffs. We are unable, on the record before us, to determine what

percentage of the rate refunds, if any, belongs to plaintiffs because they have not provided a dollar amount and Alpha has not responded at all. Nevertheless, if the amount is anything but de minimus Alpha must return it. Common sense dictates that it would be grossly unfair for Alpha to retain plaintiffs' share of any refunded money.

## III. CONCLUSION

The judgment of the district court is affirmed because plaintiffs failed to prove that their welfare benefits vested upon retirement, but the matter of the refunded premiums that were contributed by plaintiffs, if any, is remanded to the district court for examination and decision.