Edward N. HUGHES and Dorothy
K. Hughes, Plaintiffs,

v.

3M RETIREE MEDICAL PLAN, and
Minnesota Mining and Manufacturing Company ("3M"), Defendants.

No. Civ.99–2062(DSD/JMM).

United States District Court,
D. Minnesota.

March 19, 2001.

Ronald I Meshbesher, Daniel John Boivin, Meshbesher & Spence, Minneapolis, MN, Denise Yegge Tataryn, Seymour J Mansfield, Richard Johnathon Fuller, Matthew B Newman, Mansfield Tanick & Cohen, Minneapolis, MN, for plaintiffs.

Paul W Heiring, John Dwyer French, Daniel C Gerhan, Faegre & Benson, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment and on plaintiffs' motion for class certification. Plaintiffs Edward and Dorothy Hughes have brought this lawsuit under the Employee Retirement Income Security Act ("ERISA") alleging that defendant Minnesota Mining and Manufacturing Company ("3M") implemented changes to the medical benefits provided to eligible retirees in violation of federal law. Plaintiffs allege that they have vested rights and that binding Eighth Circuit case law prohibits 3M from unilaterally changing their post-retirement medical benefits. Plaintiffs' also seek class certification. For the reasons stated, defendants' motion for summary judgment is granted, plaintiffs' summary judgment motion is denied, and plaintiffs' motion for class certification is denied as moot.

## BACKGROUND

Defendant 3M has voluntarily provided medical benefits to eligible retirees and their eligible family member for over 30 years.[1] Medical benefits were provided to retired employees from one of two sources: the 3M Retiree Plan (until an employee became eligible for Medicare at age 65) and then the 3M Medicare Supplement Plan ("Med–Sup"). According to defendants, throughout this period the applicable plan documents expressly reserved to 3M the right to amend or terminate those benefits, and 3M has exercised its right to unilaterally change benefits on repeated occasions. (Second Thompson Aff. ¶ 6 and ¶ 7.) Effective in 1997 and 1998, 3M implemented another series of changes which became effective as to plaintiffs on January 1, 1998.

Plaintiff Edward Hughes was employed by 3M from 1946 until his retirement in 1991 at age 66. Throughout his employment he was a member of the Oil, Chemical and Atomic Workers International Union ("OCAW"), AFL–CIO, Local 6–75, and at the time of retirement he was covered by the 1991 through 1994 collective bargaining agreement ("CBA") then in effect between 3M and Local 6–75. That collective bargaining agreement expired in 1994. Plaintiff Dorothy Hughes is the spouse of Edward Hughes. Dorothy Hughes was also age 66 when she retired from 3M.[2] Plaintiffs allege that the CBA in effect when Edward Hughes retired in 1991 contained a promise that the cost of retiree medical benefits would not be changed for the retiree's lifetime.

According to plaintiffs, the CBA contained both labor agreement documents and a "Your Benefits Program" booklet ("Your Benefits").[3] Plaintiffs contend that the Your Benefits booklet is the operative summary plan description ("SPD") in this case. Plaintiffs further contend that it is within the Your Benefits booklet that the purported vesting language can be found.[4] Defendants counter that the Your Benefits booklet is not the operative SPD for two

---

1. Parties do not dispute that while 3M negotiated with active employees for their post-retirement benefits, post-retirement benefits for already retired employees were never the subject of collective bargaining and modifications to the medical plan for employees who had already retired were never negotiated.

2. Since plaintiffs were both 66 when they retired, their retiree medical benefits were always under the Med–Sup plan, and any claim of vesting must relate solely to the benefits provided under the Med–Sup plan.

3. Pls.' Mem.Supp.Summ.J. at 3.

4. The purported vesting clause for post-retirement medical benefits located in the Your Benefits booklet stated:

   If you retire with 15 years of pension service regardless of when you were hired, you

reasons. First, the Your Benefits booklet is a 73–page document covering numerous employee benefits and devotes less than a half a page to retiree medical benefits, and second, the Your Benefits booklet delineates that it is not the operative SPD since it expressly states that: "[b]ooklets describing your post-retirement benefits will be given to you when you retire."[5] The booklet given to plaintiffs when they retired was the Med–Sup plan booklet. Defendants argue that the governing SPD is therefore the Med–Sup plan booklet, not the Your Benefits booklet.

3M first established its Med–Sup plan in 1965. 3M's decision to create this plan was voluntary, and according to 3M, it has never bargained with any union over its terms or provisions. (Second Thompson Aff. ¶ 4.) By the time plaintiffs Edward and Dorothy Hughes retired from 3M, the Med–Sup plan provided a basic lifetime maximum benefit of $10,000 and provided this coverage free of charge to retirees who had at least 15 years of service or who had been hired before July 1, 1975. (*Id.*) The Med–Sup plan contains no language that plaintiffs have alleged might be construed as establishing a vesting clause.[6]

Defendants contend that over the years 3M has periodically and unilaterally exercised its right to make changes in the provisions of the Med–Sup plan.[7] Defendants also assert that whenever 3M has made changes to the Med–Sup plan, the changes were uniformly applied to all retirees covered under that plan, including those retirees who had retired under expired collective bargaining agreements with the various local unions. (Second Thompson Aff. ¶ 7.)

Defendants thus dispute the basic premise underlying plaintiffs' complaint and assert that the facts demonstrate that it has never been the case that a union retiree would continue to receive a "snapshot" of benefits that were in effect at the time he or she retired, nor has it ever been the case that changes to the Med–Sup plan would only be applied prospectively to future retirees. Plaintiffs, however, contend that given the purported vesting language in the Your Benefits booklet, no modifications to the medical plan for employees who had already retired can be unilaterally instigated by 3M.

Defendants also assert that they are alternatively entitled to summary judg-

---

and your spouse will receive medical benefits for your lifetime at company expense.

5. This sentence is also cross-referenced in the Your Benefits booklet under the "When Benefits Stop" section where it stated, "all benefits from the 3M Medical Plan stop on the ... Date of your retirement; see 'Post–Retirement Benefits' page 20." It is on page 20 that this sentence appeared.

6. Plaintiffs do not assert that their medical benefits vested under the terms of the Med–Sup plan nor that there exists any language in the Med–Sup plan that might be construed as constituting a vesting clause. Instead, plaintiffs assert that the resolution of this case depends only upon the court's interpretation of the purported vesting language in the CBA Your Benefits booklet. As will be discussed, the court concludes that, although the parties disagree as to which document is legally oper-

ative as the SPD, the ultimate resolution of this dispute is unnecessary since the court determines that even when looking solely at the purported vesting language of the Your Benefits booklet defendants are entitled to summary judgment.

7. For example, defendants point to unilateral coverage changes made in 1983, 1991, and 1996. (Second Thompson Aff. ¶ 5.) The record also reflects that 3M has periodically and unilaterally increased the amount of monthly premiums paid by retirees. (*Id.* ¶ 6, ¶ 21, and Ex. G.) Although plaintiffs did not specifically recall during their depositions whether their premiums had increased, they did indicate that they would defer to 3M's corporate records on this matter. (*See* Edward Hughes Dep. at 64; Dorothy Hughes Dep. at 93.)

ment since there exists in both the Your Benefits booklet and the Med–Sup plan express and unconditional reservation of rights ("ROR") clauses. The pre–1994 CBA benefits plan included a reservation of rights clause that stated:

> The company hopes and expects to continue these plans indefinitely, but reserves the right to amend or discontinue them, subject to collective bargaining as required.

This provision was found on the last page of the Your Benefits booklet given to active employees under the heading, "Future of the Plan." The reservation of rights clause in the Med–Sup plan in effect at the date of plaintiffs' retirement stated:

> The company fully intends to continue this plan indefinitely, but reserves the right to change or discontinue it if necessary.

This clause was also located under a heading, "Future of the Plan." [8] Plaintiffs contend that neither clause is applicable since neither clause specifically stated that 3M reserved the right to amend or discontinue the plan as to employees who had already retired, nor did these ROR clauses properly cross-reference the purported vesting clause.

In 1997, 3M began the rollout of a revised retiree medical plan that became effective as to Edward and Dorothy Hughes beginning on January 1, 1998. Several things about the revised plan are significant, according to defendants. First, with certain minor exceptions, the revised plan created a uniform plan that applied to all 3M retirees.[9] Second, defendant contends that some parts of the revised plan were marked improvements over the previous Med–Sup plan that previously had covered plaintiffs.[10]

On or about December 29, 1999, plaintiffs filed the present lawsuit alleging that the 1998 changes should not be applied to them because the collective bargaining agreement in effect when Edward Hughes retired in 1991 allegedly contained a promise of "vested" retiree medical benefits. (*See* Compl. ¶ 7 and ¶ 24.) Plaintiffs thus are asking the court to declare "that plaintiffs ... are entitled to the 3M retiree medical benefits program which was in place when [plaintiffs] first became eligible for such program, without modifications to the premium level or to the deductible level." (Compl. ¶ 2 at 10.) Plaintiffs also allege in their complaint that 3M promised to provide their retiree medical benefits

---

8. Additionally, the Med–Sup plan cross-referenced this ROR clause on a separate page that contained the following language describing what would happen in the event that 3M ended the plans:

   *When Coverage Stops*
   All benefits from this Plan Stop:
   > If you fail to pay the required cost; ...
   > Maximum benefits from the Plan have been paid, or
   > If 3M discontinues the plan; see page 42, "Future of the Plan"

9. Prior to this, the benefits provided to 3M retirees depended upon the retiree's age. Those 65 or older, as were plaintiffs, received benefits under the Med–Sup plan and Medicare. Those under age 65 received the same medical benefits as a similarly-situated active

employee until reaching the age of 65 when the retiree was switched over to the Med–Sup plan. The two plans were not identical. The pre–65 retirees received some benefits that the post–65 retirees did not. (Second Thompson Aff. ¶ 8.)

10. Some of the improvements in the revised 1998 plan included: (1) coverage for additional services, such as preventive care, chiropractic care, hospice and cardiac rehabilitation, (2) creating annual "out of pocket maximums" that provided protection for persons incurring substantial medical expenses in a given year, (3) increasing the "lifetime" maximum benefits payable, and (4) in some cases decreasing premiums from the amount participants were paying. (Second Thompson Aff. ¶ 12.)

"at company expense". (Compl. ¶ 7 and ¶ 8.) Essentially, plaintiffs' claim is that the collective bargaining agreement Edward Hughes retired under created a "snapshot" of the retiree medical program as it existed at that time, and that "snapshot" plan is fixed and can never be modified.

Plaintiffs specifically allege in their complaint two alternative theories for recovery. First, plaintiffs allege that retiree medical benefits became vested and unchangeable at the time of their retirement under the provisions of the relevant documents. Second, plaintiffs allege that 3M separately contracted with or promised plaintiffs that the provisions of its retiree medical benefit plans in effect at the time they retired would never be changed as to them.[11] Defendants contend that neither theory is supported by the facts or the law, and since the relevant facts are undisputed and the legal standards covering these theories are clear, defendants are entitled to summary judgment.

## DISCUSSION

### A. Summary Judgment Standard

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. *Id.* Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. *Id.* Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to support an essential element of a claim, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "Whether the employer intended welfare benefits to vest 'presents an issue of contractual interpretation,' for which summary judgment is particularly appropriate," *In Re Sears Retiree Group Life Ins. Litigation*, 90 F.Supp.2d 940, 944 (N.D.Ill.2000) (quoting *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 564 (7th Cir.1995)); *see Howe v. Varity Corp.*, 896 F.2d 1107, 1109 (8th Cir.1990) ("The issue we confront is 'simply one of contract interpretation'") (citing *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1516 (8th Cir.1988)).[12]

---

**11.** The court concludes that since the two theories of recovery are inextricably intertwined, the court need not address each independently but will resolve this dispute globally. Moreover, the court notes that the parties have taken a similar course in the extensive briefing of their respective motions.

**12.** Summary judgment is also especially appropriate in resolving disputes involving the interpretation of unambiguous contracts.

With this standard at hand, the court addresses the parties' motion.

Since both parties have brought motions for summary judgment, they implicitly acknowledge that there are no material facts in dispute. Similarly, the parties appear to concede that the relevant retiree medical plan language is clear and unambiguous and thus ripe for summary judgment.[13] The parties also concede that this litigation hinges upon the resolution of two core issues: whether 3M vested plaintiffs' post-retirement medical benefits, and if so, can 3M unilaterally modify those vested benefits through the relevant reservation of rights clause.

While the parties vigorously dispute whether the Your Benefits booklet or the Med–Sup plan booklet governs as the operative SPD, the court concludes that when applying either, defendants are entitled to summary judgment. First, after a careful review of the Med–Sup plan, the court determines that no vesting language can be found in the terms of this plan and that this plan has an unambiguous and clear ROR clause. Second, accepting plaintiffs' position that the resolution of this case depends upon the court's interpretation of two clauses in the Your Benefits plan, the purported vesting clause and the ROR clause,[14] the court similarly determines that defendants are entitled to summary judgment. The court makes this

determination because, after a careful review of the unambiguous language of the clauses at issue and the entire Your Benefits plan document, the court concludes that: (1) there was no vesting of retiree medical benefits, (2) defendants clearly reserved the right to unilaterally alter the plan, and (3) there exists in the Your Benefits booklet a clear and unambiguous cross-reference to the Med–Sup plan. Lastly, the record adequately reflects that in the past defendants have made unilateral changes in the cost of the retiree medical benefits that plaintiffs did not contest. The court notes that these unilateral changes are inherently inconsistent with plaintiffs' present claim that the cost of their medical benefits vested on the day that they retired.[15] *See DeGeare v. Alpha Portland Indus., Inc.,* 837 F.2d 812, 814 (8th Cir.1988) (affirming judgment in favor of employer and noting that "the court considered the conduct of the plaintiffs at various times and found it to be inconsistent with their theory that benefits are vested."), *vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989).

**B. Vesting**

The first and most essential issue this court must resolve is whether plaintiffs' medical benefits vested for purposes of ERISA. Whether vesting has occurred

---

*Howard v. Russell Stover Candies, Inc.,* 649 F.Supp. 947, 953 (D.Minn.1994). In other F.2d 620, 623 (8th Cir.1981). Whether or not a contract term is ambiguous is a question of law. *Lehman Bros. v. Clark Oil & Refining Corp.,* 739 F.2d 1313, 1317 (8th Cir.1984). Extrinsic evidence is not relevant for determining the existence of ambiguity. *St. Louis Union Trust Co. v. U.S.,* 617 F.2d 1293, 1300 (8th Cir.1980). A contract term is ambiguous if it is reasonably susceptible to more than one construction. *Ehrhardt v. Penn. Mut. Life Ins. Co.,* 902 F.2d 664, 667 (8th Cir.1990). If a contract term is determined to be unambiguous, its interpretation is a question of law. *Cooper v. Lakewood Eng'g & Mfg. Co.,* 874

words, when a contract is unambiguous, it is appropriately before the court for construction. *See Lakeland Tool & Eng'g, Inc. v. Thermo–Serv, Inc.,* 916 F.2d 476, 481 (8th Cir. 1990).

13. *See* Pls.' Mem.Supp.Summ.J. at 2 and 16; and Defs.' Reply Mem.Supp.Summ.J. at 2.

14. *See* Pls.' Mem. Opp'n Summ.J. at 4.

15. *See* Second Thompson Aff. ¶ 6 and ¶ 7; Dorothy Hughes Dep. pp. 70–73; and Edward Hughes Dep. pp. 21, 63–64.

is a legal issue governed by ERISA. *See John Morrell Co. v. United Food & Commercial Workers Int'l Union*, 37 F.3d 1302, 1303 (8th Cir.1994). ERISA distinguishes between two kinds of employment benefits: welfare benefits and pension benefits. *See* 29 U.S.C. § 1002(1)–(2) (2000). The parties concede that the plan in dispute is a welfare benefits plan for purposes of ERISA. ERISA does not require vesting of welfare benefits. *Barker v. Ceridian Corp.*, 122 F.3d 628, 632–33 (8th Cir.1997); *Howe*, 896 F.2d at 1109. Thus, retiree medical benefits provided through welfare benefit plans need not automatically vest, and an employer may unilaterally modify or terminate retiree medical benefits at any time absent the employer's specific contractual agreement to the contrary. *See Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Howe*, 896 F.2d at 1109 (citing *Anderson*, 836 F.2d at 1516–1517).

■ Vesting is determined by a review of the plan documents. *Barker*, 122 F.3d at 633. ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written plan document." 29 U.S. § 1102(a)(1). Summary plan descriptions ("SPDs"), also required by ERISA, explain the benefits of a particular welfare benefit plan and must be distributed to employees. 29 U.S.C. § 1022. SPDs are part of the ERISA plan documents. *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 949 (8th Cir.1994). In interpreting the plan documents, the court applies the law of trusts. *Id.* at 950. The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under these or principles, if a court determines that a term of the trust instrument is ambiguous, the court may look to extrinsic evidence to determine the intent of the settlor. *Jensen*, 38 F.3d at 950. The determination of whether a plan is ambiguous is a question of law. *See In Re Unisys Corp. Retiree Medical Benefit ERISA Litigation*, 58 F.3d 896, 907 (3d Cir.1995).

■ Vesting of welfare benefits is not presumed. *See Barker*, 122 F.3d at 632–633. Plaintiffs bear the burden of proving a promise of vested retiree medical benefits. *See Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1345 (8th Cir. 1997) ("ERISA does not require that welfare benefits vest, and the burden is on the claimant to show that his welfare benefits had vested under the terms of the plan."); *Howe*, 896 F.2d at 1109 ("plaintiff's have the burden of proving vested welfare benefits."). To meet this burden, plaintiffs must prove their benefits vested by a preponderance of the evidence. *See DeGeare*, 837 F.2d at 815 ("plaintiffs must establish their case by a preponderance of the evidence if they are to prevail").

■ Any such promise to vest must be written and incorporated into the ERISA plan itself. *See Barker*, 122 F.3d at 633; *United Paperworkers Int'l Union v. Jefferson Smurfit Corp.*, 961 F.2d 1384, 1386 (8th Cir.1992); *Houghton v. SIPCO, Inc.*, 38 F.3d 953, 957 (8th Cir.1994). Because vesting welfare benefits constitutes an extra ERISA commitment, an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language. *Int'l Union, UAW v. Skinner Engine Co.*, 188 F.3d 130, 139 (3d Cir.1999). *See also Anderson*, 836 F.2d at 1517 (vesting requires a specific expression of the employer's intent to be bound); *Gable v. Sweetheart Cup Co. Inc.*, 35 F.3d 851, 855 (4th Cir.1994) (same); *Wise v. El Paso Natural*

*Gas Co.,* 986 F.2d 929, 938 (5th Cir.1993) (requiring specific and precise language). Where a document is silent on the issue of vesting, it is presumed that the benefits were not intended to vest. *Murphy,* 61 F.3d at 565. Finally, an employer's promise to future retirees to provide benefits for a "lifetime" is not automatically synonymous with being "vested." *See Anderson,* 836 F.2d at 1518; *DeGeare,* 837 F.2d at 814–815; and *Unisys,* 58 F.3d at 903–904.

In this case the court finds no ambiguity and concludes that plaintiffs have failed to meet their burden since they fail to demonstrate that defendants have chosen or agreed to make the welfare benefits at issue vested. *See Howe,* 896 F.2d at 1109; *Hutchins,* 110 F.3d at 1345 ("burden is on the claimant to show that his welfare benefits had vested"). Neither of the relevant documents—the Your Benefit booklet or the Med–Sup plan—supports plaintiffs' allegation that their benefits vested or that defendants promised that "the CBA an individual retired under would define that individual's retiree medical plan" for the rest of his or her life. (*See* Compl. ¶ 7.) The only and sole language plaintiffs cite in support of their claim is the statement in the Your Benefits booklet that provides:

> If you retire with 15 years of pension service regardless of when you were hired, you and your spouse will receive medical benefits for your lifetime at company expense.

The court concludes that this language does not state that a retiree's medical benefits became fixed and inviolate upon retirement. Thus, this language fails to satisfy plaintiffs' burden of establishing that their benefits vested.

The unambiguous language of the Your Benefits booklet also does not promise to preserve any "cost structure" in effect on the date that a retiree retired, nor does it promise that OCAW retirees would never have to pay greater premiums or deductibles than were in existence on the date that they retired. The court therefore is not persuaded by plaintiffs' argument that this language created a promise that a "cost structure" of the retiree medical program vested when plaintiffs retired in such a way that they could not be changed.[16]

Moreover, as to the language, "for your lifetime at company expense," the court concludes that the record abundantly reflects that this language has never meant the provision of medical benefits at total company expense or at any fixed level of company expense. *See Houghton,* 38 F.3d at 957; *In Re Unisys,* 58 F.3d at 904. The record reflects that both premiums and deductibles have been charged to retirees throughout the years,[17] and that defendants have made numerous unilateral changes to the level of premiums and deductibles over the years. (*See* Second Thompson Aff. ¶ 6.) Thus, plaintiffs cannot demonstrate that a particular level of costs have ever vested.

16. Furthermore, plaintiffs' assertion that they vested in the "cost structure" in effect on the date of retirement also fails because its underlying premise, that until 1998 changes in the "cost structure" of the plan were only applied to future retirees and were never applied to past retirees, does not comport with the factual record. (*See* Second Thompson Aff. ¶ 7.) The record supports a conclusion that 3M's unilateral premium increases have been applied to all retirees covered under the Med–Sup plan and does not support plaintiffs' assertion that a 3M retiree would continue to pay the same premiums as was in effect at the time he or she retired. (*See* Second Thompson Aff. at ¶ 6 and ¶ 7.)

17. Plaintiffs concede that they have always shared in the expenses of their retiree medical benefits. (*See* Edward Hughes Dep. at pp. 38–39 and 63; and Dorothy Hughes Dep. at pp. 69–70 and 86.)

Plaintiffs also attempt to argue that binding Eighth Circuit precedent found in *Barker* and *Jensen,* dictates that plaintiffs are entitled to vested rights given the language in dispute. *Barker* and *Jensen* are distinguishable on several bases. First, *Barker* and *Jensen* involved specific promises that actually appeared in their respective SPDs at issue. *Barker* sought to enforce a promise that the company "will continue paying all premiums until you and your dependants are no longer eligible for the plans", 122 F.3d at 631, while *Jensen* sought to enforce a promise that benefits "would be provided until the retiree dies, a spouse divorces, or a child marries or reaches age 19." 38 F.3d at 950. The Eighth Circuit found that these specific and express promises, coupled with other language in the SPDs, created an ambiguity within the four corners of the document that could only be resolved by resorting to extrinsic evidence.

In the present case, the court concludes that plaintiffs' claim is not rooted in specific vesting language found in the Your Benefits booklet, but is an attempt by plaintiffs to leap from the "at company expense" language to a claim that the "cost structure" at the time of retirement would never be changed. Any such alleged promise is not specifically found anywhere in the Your Benefits booklet, and this case must be controlled by the general rule, as will be further discussed, that an unambiguous reservation of rights to amend or terminate a plan is fatal to a claim that rights have vested. *See Howe,* 36 F.3d at

752; *United Paperworkers,* 961 F.2d at 1385.

Second, *Barker* and *Jensen* each involve distinctly different language that limited the employer's right to make changes to the respective benefits in dispute. For example, in *Barker,* while the SPD contained a broad reservation of the right to amend, it also expressly stated: "[i]f the group Long–Term Disability plan terminates, and if on the date of such termination you are totally disabled, your Long–Term Disability benefits and your claim for such benefits will continue as long as you remain totally disabled as defined by the plan." 122 F.3d at 631. In *Jensen,* the plan provided: "[u]nless otherwise expressly provided therein, amendments shall not be applicable to persons who are receiving pensions hereunder prior to the effective date of such amendment." 38 F.3d at 949. The court concludes this language is in stark contrast to the language in dispute in the present matter.[18] Thus, the court is not persuaded that this case is similar to *Barker* or *Jensen,* but rather considers the present matter to be more analogous to the Eighth Circuit's holding in *Howe. See Howe,* 36 F.3d at 752 (affirming summary judgment for employer and holding that employer's unambiguous reservation of the right to amend defeated plaintiff's claim of vested retiree medical benefits).

Lastly, the record also reflects that the plaintiffs' medical benefits after retirement were never provided under the Your Benefits booklet cited. Plaintiffs were both over age 65 at the time they retired, so

---

18. As will be discussed, 3M has clearly reserved the right to make changes, and without reference to continuing benefits in the face of plan termination as in *Barker,* and without language limiting retroactive changes as in *Jensen.* 3M's SPD as relied upon by plaintiffs states, "[t]he company hopes and expects to continue these plans indefinitely, but reserves the right to amend or discontinue them, sub-

ject. to collective bargaining as required." Unlike *Jensen* or *Barker,* there is no other language within the four corners of the document that creates ambiguity regarding 3M's intent to reserve fully its right to make changes, no language that indicates any benefits will continue notwithstanding termination and no language that indicates amendments may not be retroactive.

their retiree medical benefits had always been provided through the Med–Sup plan. Thus, any claim for vested benefits must relate solely to the benefits provided under the Med–Sup plan. As defendants assert, and the record reflects, the Med–Sup plan provided a basic lifetime maximum benefit of $10,000 at no charge to retirees. There is no claim that 3M has failed to provide this basic benefit.[19] The Your Benefits booklet unambiguously put plaintiffs on notice that their retirement benefits would be provided under the terms of the Med–Sup plan. Plaintiffs' reliance on the Your Benefits booklet thus is fundamentally misplaced, because the terms of this booklet did not apply to them when they retired after the age of 65.

In sum, the court concludes that plaintiffs have not satisfied their burden of establishing that an affirmative promise of vested benefits exists, and accordingly, the court concludes that plaintiffs' claim fails as a matter of law.

### C. Reservation of Rights

■ The clear and unambiguous reservation of rights language in both the Med–Sup plan and the Your Benefits booklet also defeats plaintiffs' claim that their medical benefits could never be changed.[20] The court concludes that no reasonable person could be confused over whether defendants had reserved the right to alter plaintiffs' benefits. The Eighth Circuit has repeatedly held that an unambiguous and unqualified reservation of the right to amend or terminate a plan will, as a matter of law, defeat a claim that the benefits provided are vested. *See Howe*, 896 F.2d at 1109 ("[plaintiffs'] burden was not met by the employer's promise to provide welfare benefits 'until death of retiree' where the employer has expressly reserved the right to terminate or amend the plan." (citing *Anderson*, 836 F.2d at 1518)); *De-Geare*, 837 F.2d at 812 (reservation of rights language unambiguously confers on the company the right to amend or terminate the plan). *See also Sears*, 90 F.Supp.2d at 944; *Murphy*, 61 F.3d at 566–567; *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603 (7th Cir.1989); *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir.1998) (en banc); *Gable*, 35 F.3d at 856.[21] Thus, the clear and unambiguous

---

19. The specific Med–Sup SPD that applied to plaintiffs, and was clearly cross-referenced in the "Your Benefits" booklet, is wholly devoid of any vesting language or language that might be construed as having vested welfare benefits.

20. The specific language of the two relevant ROR clauses is spelled out *supra*, p. 1066. The Your Benefits book also provided under the heading, "When Benefits Stop," that "all benefits ... stop on the Date of your retirement" and cross-referenced the page where the post-retirement benefits were explained. The court concludes that this unambiguous language provides further proof that the welfare benefits in dispute were not vested and that defendants unambiguously reserved the right to amend or terminate the welfare benefits plans.

21. Plaintiffs also seem to imply that their benefits may have also vested because ERISA regulations arguably require ROR language to be placed next to the purported vesting clause or be expressly cross-referenced. (Pls.' Mem. Supp.Summ.J. at 14–15.) Defendants persuasively argue that this is a baseless contention and cite significant authority to support the conclusion that a ROR clause, such as at issue here, need only be located in a single place within the plan document. *See Frahm v. The Equitable Life Assurance Soc.*, No. 93C0081, 1995 WL 579282, *7 (N.D.Ill. Sept.29, 1995) ("ERISA permits an employer to insert a general reservation of rights clause in the plan but does not require that a specific reservation of rights clause be placed after each provision of the plan."); *Jensen*, 38 F.3d at 952 (failure of SPD to disclose that retiree medical benefits were not vested was not a violation of SPD regulations); *Gable*, 35 F.3d at 858 (failure to disclose that plan could be amended was not ERISA violation); *Sprague*, 133 F.3d at 401 (same); and *Wise*, 986 F.2d at 935 (same).

ROR clause here provides an additional basis to deny plaintiffs' claim for vested benefits. *See Barker*, 122 F.3d at 634.

The court is also not persuaded by plaintiffs' argument that they are entitled summary judgment given the language at the end of the ROR clause in the Your Benefits booklet that states, "subject to collective bargaining as required." Defendants are not required to submit any changes in retiree medical benefits for *already* retired employees to collective bargaining. Retirees are not and cannot be members of a bargaining unit. Additionally, the Supreme Court has categorically held that changes in the medical benefits provided to persons who have already retired are a permissive and not a mandatory subject of bargaining. *See Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 176–178, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). Thus, an employer's "unilateral mid-term modification of a permissive term such as retirees' benefits" is permissible and the employer is not required to bargain with respect to the changes. *Id.* at 188, 92 S.Ct. 383.

### D. Ambiguity

Lastly, the court rejects plaintiffs' claim that the "for your lifetime at company expense" language when juxtaposed with either ROR clause makes the 3M benefit plan documents ambiguous. *Sprague*, 133 F.3d at 401 (affirming grant of summary judgment after determining that the SPD contained an unconditional ROR clause and noting that "[w]e see no ambiguity in a summary plan description that tells participants both the terms of the current plan entitle them to health insurance at no cost throughout retirement and that terms of the current plan are subject to change."); *Unisys*, 58 F.3d at 904–905 (finding no ambiguity in language similar to defendants that referred to both lifetime retiree medical benefits and the employer's ROR to terminate or amend).

While plaintiffs contend that this case is identical to the facts in *Barker v. Ceridian*, as the court has already noted, the language at issue in this case is materially different from the language at issue in that case. Here, 3M's language unequivocally reserves its right to amend or terminate its plans, whereas the reservation of rights clause in *Barker*, by its terms was conditional and imposed limits on the employer's otherwise unfettered power to amend or terminate the plan. Moreover, in *Barker*, the employer paid health, dental, and life insurance premiums for employees who were disabled and receiving benefits under the company's long-term disability plan. When Ceridian discontinued paying those premiums, the employees who were on disability before the discontinuance sued, alleging that they had a vested right to continue receiving premium payments as part of the long-term disability benefits provided by the plan. While the SPD reserved to the employer the right to amend or terminate the plan, the SPD also provided:

> If the group Long–Term Disability plan terminates, and if on the date of such termination, you are totally disabled, your Long–Term Disability benefits and your claim for such benefits will continue as long as you remain totally disabled as defined by the plan.

122 F.3d at 631. The Eighth Circuit held that this language created an ambiguity as to whether the employer had reserved the right to amend or terminate the benefits provided to employees who were *already* out on disability at the time of the change, and that the court was required to consider extrinsic evidence in resolving this ambiguity. *Id. See also Barker v. Ceridian Corp.*, 193 F.3d 976, 979 (8th Cir.1999) ("we held in *Barker I* that the reservation of rights ... was ambiguous, since it was not clear whether the reservation of rights preserved the right to amend the plan only

as to those who would become entitled to the benefits in the future or also as to those already on disability.")

In the present case, by contrast, the relevant SPDs contain an unconditional and unambiguous reservation of the right to amend the plans. The Your Benefits booklet states that "the company hopes and expects to continue these plans indefinitely, but reserves the right to amend or discontinue them ..." As the Eighth Circuit stated in *Howe*, this language "is fatal to the claim of the Retired Class that, once they had retired from [the employer] their right to welfare benefits became vested for life" and defendants are entitled to summary judgment "as a matter of law." 36 F.3d at 752.

Thus, the court concludes that since the relevant plan documents here demonstrate that defendants clearly and unambiguously have reserved their right to make changes to the retiree medical benefits, and defendants have in fact made such changes repeatedly over the years, the 1998 changes challenged by plaintiffs in this lawsuit are simply another change that defendants had the right to make.[22] Moreover, despite plaintiffs' contention, the court does not conclude they have a vested right to the "cost structure" of the retiree medical program in effect on the date they retired. The SPD language cited by plaintiffs does not support this contention since it neglects reference to "costs" at all much less to a particular level of costs in effect upon retirement. Plaintiffs have failed to meet their burden of proving a promise of vested benefits under ERISA law.

---

22. The Supreme Court has also supported the need for an employer to have flexibility to amend benefit plans. *See Inter–Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.,* 520 U.S. 510, 515, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997).

## CONCLUSION

For the reasons stated, the court denies plaintiffs' motion for summary judgment and grants defendants' motion for summary judgment. Accordingly, plaintiffs' claims are dismissed with prejudice, and plaintiffs' motion for class certification is denied as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**